Nathan R. Sobel, J.
This motion to suppress (Code Grim. Pro., § 813-c) raises issues of law not heretofore decided by our appellate courts in this State.
The facts may be briefly stated.
The police had a search warrant for a garage. This factor is however of no moment.
After obtaining the warrant and while continuing their observations of the garage one Puccio was observed ‘ ‘ buying ’ ’ a silver foil package from a “seller” in the garage. The defendant Estrada was sent by the seller to the rear of the garage to obtain the package. His possession was thus momentary and transitory in the sale transaction.
A police officer followed Puccio after he left the seller and arrested and searched him. The silver foil package was found to contain narcotics.
Puccio was charged by information in the New York City Criminal Court with the misdemeanor of possession (Penal Law, § 1751-a). Believing that he was searched pursuant to a search warrant, he moved to controvert (Code Grim. Pro., § 807). The court (Schob, J.) having trial jurisdiction (Code Crim. Pro., § 813-e) ruled that the search warrant was intended *454 for the garage and its occupants (not for possible purchasers) and the search warrant did not describe Puccio. That court then considered the reasonableness of Puccio’s search as incidental to his lawful arrest. It ruled (under Code Grim. Pro., § 177, subd. 1 prior to its amendment July 1, 1963) that what the police officers observed was not the commission of a crime in their presence. The Puccio search was held unreasonable and the narcotics suppressed but of course not returned (§ 813-c).
In the meantime the seller to Puccio (including defendant Estrada) was arrested. He was permitted to plead guilty to a misdemeanor (reduced) in the New York City Criminal Court. Estrada refused to plead guilty. He was eventually charged by the instant indictment with selling (aiding and abetting) to Puccio as a felony (Penal Law, § 1751).
Estrada makes this motion to suppress. He does not contend that he was unreasonably searched since nothing was found upon his person. He contends that contraband unreasonably seized from another (Puccio) may not be used against him. This is the main point made in this motion.
The People raise two secondary issues which are fully discussed since these too have not been the subject of appellate decision.
I. abe Eraran gs binding?
The People urge that the findings of Judge Schob in the Puccio action are not binding upon this court in the Estrada action.
A short answer is that I find independently (on the basis of the stipulation that the Puccio minutes are deemed for that purpose in evidence) that the narcotics in question were unconstitutionally seized from Puccio.
Ordinarily where the same criminal action is involved, the findings of a Judge of any court having jurisdiction to decide the pretrial motion (Code Crim. Pro., § 813-e; cf. People v. Montanaro, 34 Misc 2d 624, 626) is binding upon the Judge of the same or any other court. Section 813-d provides: “If a motion has been made and denied before trial, the determination shall be binding upon the trial court.” Commonly the pretrial motion and the trial will be in the same court (Code Crim. Pro., § 813-e, pars. 1, 2). But the findings of another court are also binding (see par. 3). Also while the statute speaks only of denials of the motion to suppress being binding, this is because under the statutory scheme (see § 813-c, par. 2) the People are prevented from using the evidence if suppressed, viz., “ it shall *455 not be admissible in evidence * * * against the moving party.” The granting of a motion to suppress is in that sense final and no issue can arise as to its binding effect upon another court or Judge.
But since the statute makes the evidence inadmissible only “ against the moving party ” and Estrada was not the moving party in the successful Puceio motion, I have made the independent finding (supra) that the narcotics sought to be used against Estrada were unconstitutionally seized from Puccio.
II. STANDING
The People contend that Estrada has no “ standing ” to move to suppress the product of an unreasonable search of another.
The “standing” issue is not generally understood. There is much confusion for which the courts are responsible. (See cases under notes 402 and 521 to U. S. Code Ann., 4th Arndt.)
Strictly speaking the term “ standing ” is applicable only to pretrial motions to suppress. A finding of standing determines no issue of " admissibility ’ ’ of the evidence sought to be suppressed. It is merely a recognition of the movant’s statutory right to avail himself of the pretrial statutory procedures (Code Crim. Pro., § 813-c; Fed. Rules Grim. Pro., rule 41, subd. [e]). If statutory “standing” is found, only then does the court determine “admissibility” which most often turns upon the reasonableness of a search.
A finding of “ no standing ’ ’ however merely determines that the movant may not avail himself of the procedural device of a pretrial determination. It does not at all determine “ admissibility ’ ’ at the trial or the constitutionality of the evidence upon which admissibility most often depends. Its net effect is merely to postpone that issue for the trial.
It is quite true that the same facts which determine that the movant has ' ‘ no standing ’ ’ to move pretrial may often require a finding of “ admissibility ” or “ reasonableness ” of the search at the trial. But these are quite different issues. The pretrial issue is properly labeled “standing”; the issue at the trial is simply one of ‘ ‘ admissibility ’ ’ of the evidence.
Yet the courts often refer to the latter as a “ standing ” issue. And the appellate courts which are compelled to rule usually on both, i.e., a finding of “no standing ” pretrial and “ admissibility ” of the questioned evidence at the trial, quite often refer to both as “ standing ” issues (see, e.g., Jones v. United States, 362 U. S. 257). In consequence, it is important to discriminate in reading the cases whether the decisions determine the pretrial *456 issue of “ standing ” or the “ admissibility ” of the questioned evidence at the trial.
Thus there are many decisions which hold that a defendant has “no standing ” to move to suppress the product of an “ unreasonable ” search of another. (See note 402, U. S. Code Ann., 4th Arndt.) These decisions turn on statutory provisions in those jurisdictions. But there are few which directly or obliquely consider the “ admissibility ” at the trial of unconstitutionally seized evidence against one who was not the ‘ ‘ victim- ’ ’ of the unreasonable search. These are discussed infra III.
The issue raised in the instant motion is a true “ standing ” issue, i.e., the right of defendant Estrada to avail himself of the pretrial procedure of a motion to suppress.
Since this is a subsidiary issue, I need not discuss at great length the history of this pretrial procedure. Suffice it to say that it had its origin in motions for the return of property unlawfully seized by the police. It was made most often before a criminal action was commenced. As such it was intended for the benefit of the ‘ ‘ owner ” as a procedural device to obtain the earliest possible restoration and use of his property. One who was not the “ owner ” could not avail himself of this summary remedy. He had no “ standing ” much as one who seeks to replevin property not belonging to him has no standing.
As developed in practice, the procedure metamorphosed into a pretrial device to suppress the use of evidence after the criminal action had been commenced but before the trial. As such, “ownership” and “standing” had less significance. It was internally inconsistent for the prosecution to contend that a movant pretrial did not “own” or “possess” the property seized — yet at the trial urge his conviction on the basis of “ ownership ” or “ possession ” of such property.
As developed, the pretrial procedure is now as much for the benefit of the prosecution as it is for the defendant. For one thing it removes from the trial disputes over prejudicial police conduct not immediately relevant to issues of guilt. It permits hearsay evidence which would not be admissible at the trial. Perhaps most important it.affords the prosecution the remedy of appeal which would not be available if the issue of admissibility is decided adversely on the trial. For these reasons a contention of “no standing ’ ’ is self-defeating. In my opinion as asserted today it merely manifests a reluctance to abide by the command of the Fourth Amendment.
The essential point of the foregoing discussion is that the existence of “ standing ” is statutory, not constitutional. The Fourth Amendment will not be violated if a State denies pretrial *457 procedures altogether. Nor will it be violated by a State statute conferring standing to suppress pretrial on some but not all. All that the Fourth Amendment requires is that evidence unconstitutionally seized be not admitted at the trial. That determination if not made pretrial because of “no standing ’ ’ must ultimately be made at the trial. The trend of course has been toward pretrial determination of issues in criminal proceedings.
A determination of “ standing ” then depends on the breadth and scope of a particular standing statute. From this viewpoint decisions of other jurisdictions with different standing statutes may be of interest but are not controlling.
All of the considerations discussed were brought to the attention of the Joint Legislative Commission which drafted our State procedural statute (Code Crim. Pro., § 813-c et seq.).
Also considered by the commission was the then relatively recent decision of Jones v. United States (362 U. S. 257, supra) which overruled some confusing lower court constructions of the Federal statute (Fed. Rules Crim. Pro., rule 41-e). (See discussion in People v. Smith, 35 Misc 2d 533.) The decision of the Supreme Court of California to adopt a liberal rule for that State was studied by the commission. (See Traynor, J., People v. Martin, 45 Cal. 2d 755, 759-761 [pre Mapp], since reaffirmed in People v. Ibarra, 60 Cal. 2d 460, 465.)
The resulting recommendation was a far more liberal rule than existed in the Federal jurisdiction even as liberalized in Jones (supra).
As enacted, the new standing statute (Code Grim. Pro., § 813-c) provided: “A person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the property * * * claimed to have been unlawfully obtained may be used as evidence against him in a criminal proceeding, may move for the return of such property or for the suppression of its use as evidence.”
The statute very realistically, and in my opinion very soundly, abolishes any old concepts of “ standing ” as it existed in other jurisdictions. It favors pretrial determination of all issues which might be raised at the trial. It therefore provides that the sole test of “ standing ” is a reasonable belief that evidence which is claimed to be the product of an unlawful search, may be used against the movant in a criminal proceeding. The new rule is in practical effect the California “ standing ” rule for searches with search warrants (discussed infra).
It has been established (by my finding as well as Judge Sohor’s) that the narcotics in issue were obtained from Puceio as a result of an unreasonable search. The People concede that *458 it is proposed to use that evidence against Estrada. Under our State standing statute Estrada has “ standing That he does not have under the present Federal rule is not controlling.
III. TAINTED EVIDENCE
A determination that Estrada has ‘ ‘ standing ’ ’ to make the instant motion does not however decide the main issue whether evidence unconstitutionally seized from another may he used at Estrada’s trial against him. “Standing” merely affords Estrada the opportunity to have the main issue determined before trial.
The issue to be decided is “ admissibility ” against Estrada of the evidence unconstitutionally seized from Puccio. As noted, supra, cases which deal with the issue of “ standing” per se are not pertinent to the main issue.
Estrada contends that the Puccio evidence is ‘ ‘ tainted ’ ’ — that as such it may not be used at the trial. This is not however a “ primary taint ” issue. A primary taint issue arises when “ derivative evidence ” which is the prioduct of prior unlawful conduct is sought to be introduced at the trial.
No court in this State has passed on this problem. Nor has the Supreme Court of the United States.
Jones v. United States (362 U. S. 257, 262, supra) was not an “ admissibility ” issue. It was solely a “ standing ” issue. The Supreme Court therefore was construing the Federal standing statute (Fed. Eules Grim. Pro., rule 41-e) when it stated (p. 261): “In order to qualify as a ‘ person aggrieved by an unlawful seizure ’ one must have been the victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search and seizure directed at someone else.” This is a flat holding that under the Federal standing statute one may not pretrial raise an issue of “ admissibility” of evidence seized from another. It is not however a holding that such evidence is admissible at the trial. No such issue was of course involved in Jones since he complained only of a search directed against him. The Jones court held that he had standing’; that the motion should have been decided pretrial; that the trial court’s finding that the ‘ ‘ standing ’ ’ ruling pretrial was binding on the trial was error and that Jones at the trial was entitled to have the merits of his claim adjudicated. The case was remanded for that purpose. The Jones court expressly overruled mentioned cases which nevertheless have been since cited as authority in both “ standing ” and “admissibility” issues. The quoted excerpt from *459 Jones therefore decides (as dicta) that a defendant has “no standing ” to object to the search of another. Our statute, as I have held, provides otherwise. Jones (supra) is not determinative of the main issue, " admissibility ’ ’ of such evidence.
In Wong Sun v. United States (371 U. S. 471) the court was not required to reach a decision on “ admissibility”. Toy (a defendant) had been the victim of a trespass. As a result of information obtained from Toy while violating the law, the police went to Tee (not a defendant) who voluntarily turned over narcotics stating it was obtained from and belonged to defendant Wong Sun. The Supreme Court held that the narcotics obtained from Tee were “derivative evidence” of the unlawful trespass of Toy’s premises. Therefore the narcotics were not admissible against Toy. This was a primary taint issue. With respect to Wong Sun the court held (pp. 491-492): “Our holding, supra, that this ounce of heroin was inadmissible against Toy does not compel a like result with respect to Wong Sun. The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Tee. The seizure of this heroin invaded no right of privacy of person or premises which would entitled Wong Sun to object to its use at his trial.” (Italics mine.)
As between Tee and Wong Sun the same relationship existed as between Puccio and Estrada. But the court held that the search of Tee was reasonable, i.e., without “ official impropriety ”. The evidence was therefore admissible against Wong Sun. We may note however that the court referring to invasions of privacy “ of person or premises ” did not say Wong Sun’s person or premises but spoke in general terms. The Jones decision although cited in the Government brief as authority for the “admissibility” of the evidence against Wong Sun was not even mentioned by the court.
This is not the sole reason Wong Sun (supra) is discussed. Wong Sun is the latest decision by the court of a “ primary taint” or “fruit of the poisonous tree” issue. Cited and discussed were Silverthorne Lbr. Co. v. United States (251 U. S. 385, 392) and Nardone v. United States (308 U. S. 338). Before and since Wong Sun many recent cases have discussed aspects of the primary taint problem (People v. Robinson, 13 N Y 2d 296; People v. Rodriguez, 11 N Y 2d 279; People v. Ditson, 57 Cal. 2d 415; People v. Corbo, 17 A D 2d 351; Smith v. United States, 324 F. 2d 879; Peek v. United States, 321 F. 2d 934).
*460 As summed up by Judge Ftjld in Rodriguez (supra, p. 286): ‘ ‘ In short, the exclusionary rule covers not only the evidence illegally obtained, but the product of the unlawful search as well. The underlying rationale is that the government may not violate the constitutional guarantee (U. S. Const., 4th Arndt.) and ‘ use the fruits of such unlawful conduct to secure a conviction. ’ (Walder v. United States, 347 U. S. 62, 64-65, supra.) And, obviously, it matters not that these ‘ fruits ’ happen to be confessions rather than some other type of evidence. (Cf. Costello v. United States, 365 U. S. 265, 278-280, supra.) ”
The primary taint doctrine applies only to “ derivative evidence ”. But the fact is that the illegal search of Puccio did “lead to” the arrest of Estrada in the sense that it made certain what had merely been “ suspected ”. It is clear that if any “ derivative ” evidence had been found on Estrada it would not have been admissible as the “ fruits of the poisonous tree ”. In logic and common sense if the “fruits ” of such unlawful conduct may not be admitted on what theory may we admit the “poisonous tree” itself? A study of the primary taint cases indicates how absurd factually such a result would be.
Two other Federal cases shed some oblique light on the problem.
In McDonald v. United States (335 U. S. 451) McDonald and another defendant Washington were tried together. McDonald who alone had been the victim of the search moved pretrial to suppress. His motion was denied. The trial court admitted the evidence against both defendants. The Supreme Court on appeal held that the search of McDonald was unreasonable. With respect to Washington who was not the victim of the search the court added (p. 456): “the denial of McDonald’s motion was error that was prejudicial to Washington as well. * * * If the property had been returned to McDonald, it would not have been available for use at the trial.” Mr. Justice Rutledge in a separate opinion stated that all unreasonably seized evidence is inadmissible against anyone. Of course if this had been the prevailing opinion, it would have decided the issue before me.
An issue similar to McDonald was decided recently in Rosencranz v. United States (334 F. 2d 738). One Amorello, a codefendant of Rosencranz, was searched. He moved to suppress pretrial. When his motion was denied he pleaded guilty. His case was severed from Rosencranz. Rosencranz not being the victim of the search had not under subdivision (e) of rule 41 moved to suppress pretrial. He however raised the issue of " admissibility ’ ’ at the trial. The Government confusing *461 “ standing ” with “ admissibility ” urged under Jones (supra) that since he had no “standing ” the evidence was per se admissible. [It also contended inconsistently that Bosencranz had “ standing ” and therefore “waived” the right to raise “ admissibility” at the trial.]
The Rosencranz court held (p. 740): “Here, a timely pretrial motion to suppress was made by Amorello, and there is no doubt but that the trial court’s erroneous denial of that motion severely prejudiced appellants since the seized materials formed a substantial part of the evidence used to convict them. In such a case, where the wrongful denial of a motion to suppress is prejudicial to both the defendant making the motion and his co-defendants as well, the right to have such evidence excluded from the trial cannot be limited to the defendant who originally made the motion to suppress. Were we to hold otherwise, the failure of the moving defendant to appeal would leave his co-defendants prejudiced by the wrongful denial of the motion to suppress but unable 1 to present their grievance before any court. ’ See Barrows v. Jackson, 346 U. S. 249, 257, 73 S. Ct. 1031, 1035, 97 L. Ed. 1586 (1953). We do not believe that it was the intention of the Supreme Court in McDonald to give a defendant this right and then make its exercise contingent upon whether or not the movant decided to take an appeal. See annotation 96 L. Ed. 76.” In Rosencrans, the codefendant Amorello had pleaded guilty before trial. He was not a codefendant at the trial. Rosencrans, therefore, extended McDonald (supra) to include such a fact situation (cf. United States v. Serrano, 317 F. 2d 356). Judge Aldrich concurring in Rosencrans took it seems to me the practical point of view in these cases (p. 742): “Without reviewing the cases in extenso, it seems to me that the real basis of the exclusionary rule is its effect as a police deterrent, and that the rule should be fashioned to deter the accomplishment of whatever purpose the police were improperly attempting to further. I believe, accordingly, that the present defendants’ rights are not simply dependent upon Amorello’s, as Washington’s were said to depend upon McDonald, but are broader, and stem from their own status as parties against whom the search was directed. Surely, in stopping Amorello’s truck, the interests of the police were not limited to the driver, but were directed against all those, whether their identities were known or not, who might be engaged in the operation of the still.” Judge Aldrich suggests that the test of admissibility turn on the intention of the officers. If the search is directed against others than the person searched then the product of an unreasonable search is not admissible *462 against such others. Estrada was clearly ‘ ‘ on target ’ ’ when Puccio was searched.
The foregoing Federal cases shed some light on the issue. None determine the issue.
The California Supreme Court has however decided the precise issue.
The decision of the California Supreme Court in People v. Martin (45 Cal. 2d 755, supra) was like Estrada, an “ admissibility ” not a “standing” issue. Mr. Justice (now Chief Justice) Tbayitob after discussing a fact situation precisely like the Estrada issue stated (pp. 760-761):
“ This result occurs whenever the government is allowed to profit by its own wrong by basing a conviction on illegally obtained evidence, and if law enforcement officers are allowed to evade the exclusionary rule by obtaining evidence in violation of the rights of third parties, its deterrent effect is to that extent nullified. Moreover, such a limitation virtually invites law enforcement officers to violate the rights of third parties and to trade the escape of a criminal whose rights are violated for the conviction of others by the use of the evidence illegally obtained against them.
“ The United States Supreme Court has clearly recognized that the ptirpose of the exclusionary rule is not to provide redress or punishment for a past wrong, but to deter lawless enforcement of the law [citing and discussing cases] * * *.
“ Since all of the reasons that compelled us to adopt the exclusionary rule are applicable whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant’s constitutional rights.” (Italics mine.)
Martin (supra) was a pre-Mapp decision. Mapp of course also emphasizes that the prime purpose of the exclusionary rule is to deter unlawful police conduct. (See, also, United States ex rel. Angelet v. Fay, 333 F. 2d 12.)
Chief Justice Traynor recently (see Traynor, Mapp v. Ohio at Large in the Fifty States, Duke L. J., 1962, p. 319 et seq.) took occasion to reaffirm his State’s position on this issue (p. 335):
“ The emphasis in our state on the deterrence of lawless law enforcement has given direction to our rules. As a result We have departed from long-entrenched federal rules on standing to object to illegally obtained evidence. - [See cases collected in Jones v. United States, 362 U. S. 257, 262-266.] Those rules have rested on property concepts, with an admixture of tort concepts. * * *
*463 “ Whatever advance the [Jones] decision makes from orthodox concepts, it indicates a continuing tendency to focus on a relation between the defendant and the property involved. Such a focus to ferret out some violated right of the defendant suggests, though perhaps unintentionally, that the objective of the exclusionary rule is to make amends to the defendant. What should be of primary concern is not the grievances of selected guilty defendants such as land-owners or the gentry of invitees, but the grievousness of official lawlessness.
“ That has been the primary concern in my state since we adopted the exclusionary rule in 1955. The defendant’s standing to object does not depend on his showing that the evidence was illegally obtained in violation of some right of his, substantial or tenuous. He need only shoiv that the state obtained the evidence illegally, whether in violation of his rights or those of third parties, which is to say that he must show that the state obtained the evidence in the course of a search and seizure that was unreasonable. ’ ’
Judge Traynor’s conclusions are logical. If the Federal rule on “ admissibility ” is to the contrary and I believe that it is not, it is reasonable to predict from the cautious language used in Wong Sun (supra) that the rule will be changed when the occasion is presented.
The California rule is practical as well as logical. Consider (a) if Estrada had been arrested and searched while still in possession of the narcotics his arrest would be unlawful and his search unreasonable (People v. Caliente, 12 N Y 2d 89, 94); (b) if Estrada and Puccio had been arrested together after consummation of the sale, both arrests would have been unlawful (People v. Loria, 10 N Y 2d 368; People v. McCarthy, 14 N Y 2d 206; People v. Caliente, supra) and the search unreasonable as to both; (c) if both had been separately arrested but either charged together or tried together, the evidence would be admissible against neither (McDonald v. United States, 335 U. S. 451, supra; Rosencranz v. United States, 334 F. 2d 738, supra). In short, the occasion when defendants will both be separately arrested and separately charged will be rare. This is evidenced by the fact that such an issue has never before been decided in this or many other jurisdictions. Adoption of the logical and practical California rule in this State will therefore create no substantial problems of law enforcement. The motion to suppress is granted.