Martin M. Kolbrener, J.
Latopolski was arrested with. Angevine and another and indicted for the crimes of burglary in the third degree and grand larceny in the first degree. A motion was made by defendant Latopolski to suppress certain evidence consisting of power tools, typewriters, adding machines and other chattels. In the hearing had before me to determine whether the chattels were illegally seized by the police, it was admitted by the District Attorney that there was no search warrant or warrant of arrest procured by the police.
Detective Siley of the New York City Police Department testified that before the arrest he observed the three defendants proceeding east in an automobile on 145th Street in Manhattan. The detective was riding with his partner in an unmarked car. Angevine was driving the car under observation and turned south on Seventh Avenue, stopping 40 feet south of 145th Street on the west side of the street.
Detective Siley and his partner, in plain clothes, parked their car facing east on the south side of 145th Street, 20 feet east of Seventh Avenue. Siley got out of the car as defendant’s car was pulling into the curb. His attention was attracted to defendant’s car because the trunk was weighted 11 all the way down to the chassis.” After parking their car, the defendants first went to Lago’s Bar on the southwest corner of 145th Street and Seventh Avenue. Angevine came out, opened the trunk of the car and Siley saw power tools and office equipment with price labels on them. Angevine went back to Lago’s and then all three defendants went to Dot’s Bar nearby. Then Latopolski went to the Horseshoe Bar which was on the southwest corner of 144th Street and Seventh Avenue. Detective Siley followed, saw Latopolski engage an unidentified man in that bar in conversation, and heard him say “ Would you like to buy some power tools! ” The man said “ No, and don’t ask me again ” whereupon Latopolski went to Dot’s Bar with Siley following him.
In Dot’s Bar the detective showed his badge, confronted the three suspects, and asked what they were doing in the neighborhood. They said they were looking for a subway. Siley asked them “ Don’t you have a car! ” and Angevine answered “ Yes ” *376 and Siley asked ‘‘ Where is it?” Angevine said it was in Nassau County. Siley then said “ That is a lie. Your ear is on the block ” and asked them to accompany him to the vehicle because he had observed the items in the trunk. Angevine displayed his registration and license to the car on request and when asked where he obtained the power tools, stated he paid $140 for them. Siley then asked Angevine to open the trunk, verified what he saw earlier, and asked all three suspects to accompany him to the station house.
There is no doubt that the Ford automobile in which the three defendants were riding was owned by Angevine. There is no doubt that Angevine turned over the keys to the detective. It was admitted by Detective Siley that at the time of this encounter there was no report of a crime that had come to him nor did he have any record that any of the chattels found in the trunk were stolen. Angevine opened the trunk at Siley’s request. After confirming what he saw in the trunk of Angevine ’s car, Siley drove it to the 32nd Precinct Station House with the merchandise still in the trunk. Thereafter, the articles were removed from the trunk the following afternoon, while none of the defendants were present. Angevine did not move to suppress and did not contest the legality of the search.
Defendant Latopolski’s motion to suppress is based upon the following: (1) There was no probable cause for an arrest and therefore the search and seizure were illegal. (2) The giving of the keys by Angevine was merely a submission to police authority and not a consent to the search. (3) The property was not seized in the presence of the defendant and therefore the seizure was illegal.
Defendant’s counsel concedes that a serious obstacle confronts him on this motion to suppress, to wit: Does Latopolski have “standing” to raise the question of illegality of seizure in this case. He cites People v. Estrada (44 Misc 2d 452) as an authority in defendant’s favor. He concedes, however, that in People v. Cefaro (45 Misc 2d 990) the same issue was resolved against the defendant.
In approaching the problem, the origin and nature of the rule concerning suppression should be noted. The rule of exclusion and suppression of evidence in these cases is not a rule rooted in the law of evidence, involving questions of competency, relevancy, materiality and kindred matters. Evidence is suppressed or excluded in these cases, only if the same was obtained by a violation of the Fourth Amendment of the United States Constitution, designed to protect a person’s rights to privacy and property. Thus the question: Does the moving defendant have *377 “ standing ”, in the motion to suppress, must first be answered. Were defendant’s rights to privacy and property violated?
Since Estrada and Cefaro (supra) the Appellate Division, First Department, has had occasion to pass upon this question. In People v. De Vivo (23 A D 2d 753) the stolen property sought to be suppressed as evidence was obtained in the premises of the purchaser after an alleged sale by defendant. The court said at page 754: “Even if the taking from the purchaser’s premises constituted an unlawful search and seizure without a warrant defendant was not the victim of the wrongdoing, and has no standing to complain (Jones v. United States, 362 U. S. 257, 261; Elkins v. United States, 364 U. S. 206, especially n. p. 223; cf. People v. De Grandis, 16 A D 2d 834, affd. 12 N Y 2d 812).” (Emphasis supplied.)
As stated in Jones v. United States (362 U. S. 257, 261):
“ The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial. The exclusion in federal trials of evidence otherwise competent but gathered by said federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy.
‘ ‘ Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and * * * establish, that he himself ivas the victim of an invasion of privacy.” (Emphasis supplied.)
With this rule in mind an examination of the testimony indicates that Angevine owned the car, and Angevine opened the trunk, whether as a submission to authority or voluntarily. (Johnson v. United States, 333 U. S. 10; People v. Abramson, 40 Misc 2d 723; People v. Porter, 37 Misc 2d 73; People v. Langella, 41 Misc 2d 65; People v. Kissinger, 40 Misc 2d 273, affd. 43 Misc 2d 820.) Thus if any person’s right to privacy and property was violated it was Angevine’s and not defendant’s. We do not know whether Latopolski was a licensee, bailee or a guest in the automobile (United States v. Shelton, 59 F. Supp. 273). He did not prove his relationship nor is there any proof in the record of what his status was or what rights he had to possession or ownership.
Thus we conclude that the proof in the record fails to establish that he has standing. He has neither alleged nor “ establish [ed], that he himself was the victim of an invasion of privacy.” (Jones v. United States, supra, p. 261.)
*378 That the property was seized by the police not in the defendant’s presence is of no significance, although as far as the record indicates, the car and its contents were driven away by Siley in the presence and sight of the moving defendant.
For the foregoing reasons, it is ordered that the motion to suppress be and it hereby is denied.