Pierre Gr. Lundberg, J.
This is a motion to suppress physical evidence upon which a hearing was ordered. At the conclusion of the People’s proof the defendant moved to dismiss and the court directed that a memorandum of law be submitted as to the “ standing ” of the defendant to suppress the evidence. It was agreed that this court would render its decision as to standing and the motion to dismiss and based upon its decision the hearing would either be terminated or continued for the purpose of the defendant submitting her case.
I find as facts the following :
On or about February 2, 1968, Detective Edmund Eoesel, attached to the Narcotics Squad of the Suffolk 'County Police Department, received a telephone call from a postal inspector at the Rocky Point, Suffolk County, New York, Post Office. Eoesel was advised that a package had been received addressed to Joseph Bongiovanni. This call was made to Eoesel pursuant to a prior request by the Narcotics Squad that it be notified if Bongiovanni received any packages since the Squad suspected him of dealing in narcotics. Together with Detective Kafka, Detective Eoesel went to the Rocky Point Post Office at about 2:30 p.m. where he met with the postmistress and was shown a package consisting of brown paper covering, a shoe box withrq which was newspaper and a brown paper bag containing a plastic bag which in turn contained approximately a kilo of marijuana. All of this was not visible to the detectives at that time. The package was received at the Bocky Point Post Office, and is so marked, in a damaged condition with the brown paper torn off one of the ends and the shoe box opened about 1% inches in width along the entire end of the shoe box. Detective Eoesel picked up and shook the box and looked inside the opening. Inside he could see the brown paper bag in the middle surrounded by crumpled newspaper, and in the newspaper he saw some green flake and seed which to him appeared to be marijuana. The detective’s experience and training are sufficient for him to identify marijuana.
Without in any way changing the opening of the box in its damaged condition, Eoesel reached into the box and extracted several of the green flake and seed which he placed in a separate *346 wrapper. At that time, he was satisfied from his inspection of what he extracted that said material was marijuana and he, then, believed that the package as a whole contained marijuana.
The package was returned to the post office shelf for delivery, and Detectives Eoesel and Kafka maintained a surveillance on the package until the post office closed at 5:30 p.m. On Saturday, February 3, the surveillance was continued by Detective Eoesel together with Thomas Schmitt until the post office closed at 12:30 p.m. The Post Office was closed on Sunday, February 4, and the surveillance was renewed on February 5. Shortly after 2:00 p.m. on February 5 the defendant came, asked for and was given the package. She proceeded to leave the Post Office, followed by Detective Eoesel, crossed the street, placed the package in the back of an automobile, got into the automobile and started to drive away when she was stopped by Eoesel. Eoesel identified himself, placed her under arrest, advised her of her four rights under Miranda and asked for and obtained the package. The package was thereafter opened and found to contain the large quantity of marijuana as previously stated.
My clear finding is that the package was received in the damaged condition and was in no way opened by Detective Eoesel; that his examination of its contents was by virtue of what he could see by looking through the opening, and that what he took out for closer examination was taken out by him without in any other way opening the package.
Except for the damaged condition of the package the description of it as given by Detective Eoesel indicates that it constituted 11 matter closed against inspection ” and as such is deemed first class mail (U. S. Code, tit. 39, § 4251, subd. [a], par. [4]; Postal Manual 131.2, .21, .211 [d].)
Additionally, the wrapping contained postage consistent with the postage due on a package of its size shipped as either air parcel post or first class mail and inconsistent with mail shipped as second, third or fourth class mail.
It would, further, appear that there is no longer any mailing class distinction between air parcel post and domestic air mail which latter is expressly classified as first class mail. (U. S. Code, tit. 39, § 4302, subd. [a]; 2 U. S. Cong. & Adm. News, 90th Cong. First Sess. 1967, p. 2262.)
The package was neither insured nor registered (cf. United States v. Van Leeuwen, 397 U. S. 249; Santana v. United States, 329 F. 2d 854, cert. den. 377 U. S. 990; Oliver v. United States, 239 F. 2d 818), Accordingly, it is my finding that, as mail, the package was mailed as first class mail.
*347 Section 4057 of title 39 of the United States Code states as follows: ‘ ‘ Opening first class mail. Only an employee opening dead mail by authority of the Postmaster General, or a person holding a search warrant authorized by law may open any letter or parcel of the first class which is in the custody of the Department.”
Effective since October 19, 1967, section 331.11 of the Postal Manual, as promulgated by the Postmaster General, reads as follows: “ Do not break, or permit to be broken, the seal of first class mail or open unsealed first class mail or parcels while in the custody of the Postal Service, unless you are employed for that purpose in a dead letter branch, or dead parcel post branch. You must observe this rule always, even though you know the letter contains unmailable matter, criminal matter, or evidence for the conviction of a crime.”
Adequate provision existing for delaying delivery until a search warrant was obtained, and more than adequate time existing between receipt on February 2 and delivery on February 5, the search of the package at the post office on February 2, 1968 must be deemed illegal. (U. S. Code, tit. 39, § 4057; Postal Manual, § 331.11; Matter of Jackson, 96 U. S. 727; Oliver v. United States, 239 F. 2d 818; United States v. Van Leeuwen, 397 U. S. 249.)
In view of the clear provisions of the United States Code, the Postal Manual and the decisions of the United States Supreme Court, there can be no “ plain view doctrine ” applied to mail in the custody of the Post Office Department. If the package was broken, it was the fault of the postal department; certainly constitutional rights cannot thus be erased. If an unsealed letter cannot be inspected, neither can a mishandled package.
The search incident to the arrest on February 5, 1968, flowed from the illegal search; in no other way can probable cause for the arrest be asserted. The initial taint of illegality invalidates this second search as to all who have the requisite standing to complain of the first search (Silverthorne Lbr. Co. v. United States, 251 U. S. 385; Wong Sun v. United States, 371 U. S. 471).
In this ease, we have no codefendants (see and cf., Wong Sun v. United States, supra; Alderman v. United States, 394 U. S. 165; People v. Avery, 31 A D 2d 885); nor (1) was this defendant present at the time of the post office search, nor (2) is she charged with possession at the time of the post office search, being the two basis for standing conferred by Jones v. United States (362 U. S. 257).
A violation of someone else’s constitutional rights does not confer standing under section 813-c of the Code of Criminal *348 Procedure (People v. Estrada, 44 Misc 2d 452, revd. 28 A D 2d 681, affd. 23 N Y 2d 719; People v. Cardaio, 30 A D 2d 843, affd. 24 NY 2d 988).
Most recently, the sender of a first class letter was found to have standing to challenge an illegal search conducted prior to actual physical delivery to the addressee (State v. Hubka, 10 Ariz. App. 595).
By all logic, the addressee as ultimate owner of the property should be afforded the same rights (cf. Oliver v. United States, 239 F. 2d 818, supra, as to the addressee husband).
This defendant claims to be neither sender nor addressee; she stands charged with the knowing and unlawful possession of the contents of the package. Without dealing in sophistries such as her rights as agent of the addressee or conjectures that she is the principal of the addressee, it seems to me she must have standing under the rationale of Jones v. United States (supra).
The Appellate Division of this Department carefully stated in People v. Estrada (28 A D 2d 681) while reversing a finding of standing: “ Whether the person claiming 1 standing ’ has been a ‘ victim ’ of a constitutional infringement or one against whom an unconstitutional act was ‘ directed ’ depends on the precise factual background of each search and seizure and the movant’s relation to the object seized or premises searched.”
The arrest of this defendant establishes that the unconstitutional act was “ directed ” at her or anyone else who might have picked up the package on February 5,1968, and she certainly has been a ‘ ‘ victim ’ ’ of that same constitutional infringement.
I conclude that the defendant has requisite standing under section 813-c of the Code of Criminal Procedure; that the search conducted in the post office was illegal and, hence, there was no probable cause for the arrest of the defendant on February 5, 1968, and that the search conducted as an incident to that arrest was, likewise, illegal. Pursuant to the stipulation of the parties the hearing is considered closed and terminated. The motion to suppress is granted.