Thelma J. OLIVER, Appellant,

v.

UNITED STATES of America,
Appellee.

Charles Lee OLIVER, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 15598, 15599.

United States Court of Appeals
Eighth Circuit.

Jan. 9, 1957.

Rehearing Denied in No. 15598
Jan. 31, 1957.

Before JOHNSEN, VAN OOSTER-HOUT and WHITTAKER, Circuit Judges.

JOHNSEN, Circuit Judge.

A wife mailed a 6-ounce package at Kansas City, Missouri, to her husband in Denver, Colorado. Included in its contents were 1¾ ounces of heroin. The package was sent by air mail. Under the statutes, all air mail not exceeding 8 ounces in weight constitutes first-class mail.[1]

The Post Office Department at Kansas City opened the package, went through its contents, and discovered the presence of the heroin. On suggestion of the Bureau of Narcotics, however, the package was restored to its original state and transmitted to Denver for delivery.

The Denver Post Office sent out a notice to the husband, requesting him to call for the package. He did so, and the package was turned over to him, but possession was immediately taken from him by a waiting narcotics agent.

Arrest was accompanyingly made of him, and shortly afterwards of the wife also, who had come on to Denver to join him. Criminal proceedings were instituted against both—against the husband in Denver, and against the wife in Kansas City.

Each filed a motion in the court at Kansas City, to suppress any possible evidential use of the package or of the examination made of it, on the ground of illegal search and seizure. The court denied the husband's motion on jurisdictional ground, holding that the question as to him was for the court at Denver. The wife's motion was considered at the time of her jury-waived trial and was denied on its merits.

Holding the search-and-seizure incidents to be lawful and admissible against her, the court found the wife guilty of, and imposed sentence upon her for, violation of 18 U.S.C. § 1716 (knowingly

Solbert M. Wasserstrom, Kansas City, Mo. (Francis L. Roach, Kansas City, Mo., on the brief), for appellants.

Horace Warren Kimbrell, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., and William O. Russell, Asst. U. S. Atty., Kansas City, Mo., on the brief), for appellee.

1. The Air Mail Act of 1925 provides, 43 Stat. 805, 39 U.S.C.A. § 462, "That when used in this Act the term 'air mail' means first-class mail prepaid at the rates. of postage herein prescribed."

mailing a poison, namely heroin hydrochloride); of 26 U.S.C. § 4704(a) (purchasing a narcotic drug not in, or from, an original stamped package); and of 21 U.S.C. § 174 (receiving, concealing and possessing a narcotic drug, known to have been imported contrary to law).

The husband has appealed from the court's jurisdictional denial of his motion to suppress. The wife has appealed from her conviction and sentence, claiming only as error the court's denial of her motion to suppress and its admitting of the incidents and results of the search and seizure as evidence against her.

The wife's appeal will be first considered. That case is presented to us by both parties, as a question entirely of whether the Post Office Department at Kansas City had a right to open and inspect the package as it did, since it was these incidents on which the Government's charges and proof against the wife were predicated.[2]

It is the contention of the wife that the opening and inspecting of the package were unlawful, because the package constituted first-class mail, and, under the existing statutes and regulations, the contents of such mail were not entitled to be opened and examined without a warrant. The Government contends that the term "first-class mail", as used in the general statutes and regulations existing and in the Air Mail Act, was intended to have significance only as a matter of postage rate and not in any way as a search-and-seizure limitation. It argues that all mail is at any time subject to being opened and examined by the Post Office Department, except letters or other sealed matter.

Here, the package as mailed consisted of a cardboard box of greeting cards and envelopes, with two of the envelopes having been used to hold the 1¾ ounces of heroin and having been sealed by means of the gummed mucilage contained on the flaps. Wrapping paper had been used to cover the box, and twine had been stretched around it, both ways, secured at the end by a tight knot. The postal employee, who undertook the task of restoring the package to its original condition, admitted that he had had difficulty in making the string stretch sufficiently, to be able to retie the knot.

In presenting the package for mailing, the wife had told the window-clerk that she wanted it sent air mail and special delivery. He weighed the package and informed her that the charges amounted to 71 cents—36 cents (6 ounces at 6 cents per ounce) for air-mail postage, and 35 cents for special delivery fee, stating that, since the package was merchandise, it was subject to a 35-cent fee for special delivery, instead of the 20-cent fee applicable to letters. The wife paid the amount indicated by the clerk as being required.

A mail carrier at the postal station, who had been serving also as an undercover agent for the Bureau of Narcotics, saw the wife mail the package. He had a speaking acquaintanceship with her and regarded her as a narcotics suspect. It was because of the suspicion voiced by him to the superintendent of the station that the package was opened and inspected, including an unsealing of the two envelopes containing the heroin. A narcotics agent was then called, who identified the powder as heroin but as a precaution removed a sample of it. Following this, the two heroin envelopes were resealed, the package was rewrapped and retied to make it appear to be in its original state, and the package was sent on to Denver for delivery.

■■ Ever since Ex parte Jackson, 1877, 96 U.S. 727, 24 L.Ed. 877, it has been regarded as settled law that the protection against unreasonable search and seizure of one's papers or other effects,

2. The wife's affidavit, in support of her motion to suppress, contained admission that heroin was included in the package and that she was the owner of it, but no attempt was made by the Government to claim that this was capable of any evidential significance except in relation to the motion.

guaranteed by the Fourth Amendment, extends in fitting manner to their presence in the mails. Congressional measures or Post Office Department regulations covering prohibitions or inspections as to mail matter can only be enforced "consistently with rights reserved to the people, of far greater importance than the transportation of the mail". Id., 96 U.S. at page 732. Thus, the Supreme Court declared generally that such measures or regulations "cannot be enforced in a way which would require or permit an examination into letters, or sealed packages, subject to letter postage, without warrant * * *". Id., 96 U.S. at page 735.

"In their enforcement, a distinction is to be made between different kinds of mail matter,—between what is intended to be kept free from inspection, such as letters, and sealed packages subject to letter postage; and what is open to inspection, such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined. Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles. The constitutional guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, wherever they may be." Id., 96 U.S. pp. 732–733.

The Government urges that the expression "letters and sealed packages" used by the Court constituted a definitive and studied fixing by it of the limits and conditions of such protection against search and seizure as it would be possible to claim against mail inspection in any situation.

It does not seem to us, however, that the expression can in its context be viewed as indicating or implying any such legal absoluteness. So to read it would require the assumption that the Court had consideredly engaged in a survey and contemplation of all the possible forms of mail which might then or at any future time exist, under legislative or administrative authority, and was presuming to speak upon the question in relation to such a total horizon.

Rather, it seems to us that the discussion in the opinion, some of which has been quoted, was primarily purposed to make it doctrinally clear that, in the Government's monopolistic right to provide the public with mail facilities, it could not escape the guaranties of the Bill of Rights, and that as to the search-and-seizure guaranty of the Fourth Amendment it would be required, in its dealing with mail, to recognize a distinction between "what is intended to be kept free from inspection" and "what is open to inspection". We thus read the words, "such as letters, and sealed packages subject to letter postage", which immediately follow the first expression quoted, and the words, "such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined", which immediately follow the second expression quoted, as having been used in each instance simply in practical illustration and not in attempted judicial formula.

Such a reading also harmonizes the opinion with the approach which ordinarily has characterized judicial consideration and resolution of search and seizure questions under the Fourth Amendment, unless the field is one in which greater restriction in search-and-seizure exercise, than may be necessary constitutionally, exists from legislative measure or administrative regulation. As was said in Schwimmer v. United States, 8 Cir., 232 F.2d 855, 861, "In general terms, the test to be applied [under the Fourth Amendment, on a search and seizure question generally] is whether the thing done, or attempted to be done, in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation, when the immediate end sought is considered against the private right affected."

■■ If, however, the field involved in a particular situation is one, as suggested above, that has been made the subject of greater legislative or administrative restriction, in scope or manner of exercising search-and-seizure privilege as to the field, the need to make consideration and resolution of the question of reasonableness on the general basis referred to may not be reached. In such a situation, the legislative measures and administrative regulations may themselves be determinative of the official impropriety or legal unfairness of the acts done, so that there is no need to go further. Such it seems to us is, on the postal statutes and regulations existing at the time of the search and seizure involved, the case that is before us.

■ At the time of the Jackson decision, there existed a statute, 17 Stat. 301, 39 U.S.C.A. § 251, not directly related to the situation involved in the case and for that reason presumably not referred to in the general discussion of the opinion, which provided that "Postmasters at the office of delivery may remove the wrappers and envelopes from mail matter not charged with letter postage, when it can be done without destroying them, for the purpose of ascertaining whether there is upon or connected with any such matter anything which would authorize or require the charge of a higher rate of postage". As related to our later discussion, it may be observed in passing that this statute contained no grant of authority to open any matter upon which first-class or letter postage had been paid.

Shortly after the Jackson opinion, Congress enacted another statute, 20 Stat. 361, 39 U.S.C.A. § 250, providing that "The Postmaster General may prescribe, by regulation, the manner of wrapping and securing for the mails all packages of matter not charged with first-class postage, so that the contents of such packages may be easily examined, and no package the contents of which can not be easily examined shall pass in the mails, or be delivered at a less rate than for matter of the first class." Again, it will be noted that the right of inspection covered by this statute was as to mail bearing *less* than first-class postage, with the imposing of an obligation upon the Post Office Department to require payment of the first-class rate upon any package, "the contents of which can not be easily examined".

At the time that Congress took occasion to enact each of these separate measures, there was on the statute books, and still is, a general provision, R.S. § 161, 5 U.S.C.A. § 22, that "The head of each [executive] department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it". Apparently, however, Congress deemed it necessary or advisable, through the two statutes referred to, to make some specific indication of the path which it intended should be traveled in the matter of opening and inspecting mail.

Regulations under the existing statutes have from time to time been promulgated by the Postmaster General, which as they have been in effect have been published in the Postal Manual. As of the time here involved, there was in effect, and appearing in the Manual, § 331.12, providing that "All unsealed matter, *except matter bearing first class postage,* may be opened for inspection if the contents are suspected to be unmailable * * *." (Emphasis ours.) Another section, § 331.11, in similar vein, imposed these limitations upon postal-employees' actions: "Do not break, or permit to be broken, the seal of first-class mail *or open unsealed first-class letters or parcels* while in the custody of the Postal Service, unless you are employed for that purpose in a dead letter branch. You must observe this rule always, even though you know the letter contains unmailable matter, criminal matter, or evidence for the conviction of a crime." (Emphasis ours.) Still further, § 131.21 specifically included "Matter sealed *or closed* against inspection" in its defini-

tion of first-class mail. (Emphasis ours.)

On the basis of the statutes and regulations which have been set out, we think it must be held that there existed at the time involved a legislative and administrative holding out, to all who might make use of the mails, that no first-class mail would, in its depositing, transmission, or delivery, be subject to any opening and inspection by the Post Office Department, without a warrant; that all mail on which first-class postage had been paid would for this purpose constitute first-class mail; and that, incident to this status, first-class postage could be required to be paid on any matter undertaken to be sent at a lower rate, which was so wrapped or secured as not to leave its contents subject to being easily examined. Moreover, as has been pointed out, the present package was specifically constituted as first-class mail, by the provision of the Air Mail Act, 43 Stat. 805, 39 U.S.C.A. § 462, "That when used in this Act the term 'air mail' means first-class mail \* \* \* ".[3]

It is not of consequence here that it may constitutionally have been possible for statutes or regulations of broader scope as to mail examination to have been adopted. The question of unreasonable search and seizure in postal inspection is entitled to be resolved, where legislative measures or administrative regulations exist, by such valid limits as have been fixed and held out thereunder as constituting the extent of mail opening and examination in which the Post Office Department will engage.

Any user of the mails, entrusting papers or effects to the Post Office Department, is entitled to rely upon their being received on this basis. The matter mailed is, of course, subject to being searched and seized on proper warrant, but this is true no matter where it may be, including the owner's personal possession. With the statutes and regula-

tions having treated all mail on which first-class postage has been paid as not being subject to plenary inspection, the only difference which can be said to exist, in the use of one form of wrapping and securing as against another, is in the risk of the contents becoming self-exposed.

A placing of first-class postage upon a package thus would, under the statutes and regulations here involved, and in the acceptance of the package for transmission and delivery, sufficiently evidence the sender's intention not to allow it to be opened and inspected by the Post Office Department at will, as to entitle him to assert search-and-seizure violation against such an administrative opening, examining and appropriating of it.

■ It happens that the thing involved in the present situation is heroin. Being contraband, there is, of course, no right to have it returned. But this fact is beside the point on the search and seizure question. Reasonableness in search and seizure is not a matter of what the things done have developed but of legal fairness in the things which have been done.

On what we have said, the judgment against the wife is required to be reversed.

■ As to the husband's appeal, we think that, under the provisions of Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A., the court was not without jurisdiction to have entertained his motion to suppress, insofar as it was related to any possible evidential use of the facts as to the opening of the package and the knowledge gained therefrom, or as to the sample of heroin taken from it, since all of these incidents had occurred in Kansas City.

The husband argues that the court also had the power to go further and to deal with the seizure made of the package in Denver, since this was so related to

---

**3.** Provision has, since this Act, been made for air parcel-post service, 62 Stat. 1097, 39 U.S.C.A. § 475, but this was done by separate Act, making the service applica-ble only to matter exceeding 8 ounces in weight and not affecting the status as first-class mail of matter not eligible for such service.

**824**

the Kansas City events as to entitle it to be considered a part of them and thus legally to be regarded as having constructively occurred there. But the package was not in fact seized from the husband until after possession of it had been turned over by the Post Office Department to him. True, a narcotics agent was standing by with the intent to immediately strip him of his possession and was successful in doing so. A foiling might, however, have occurred, from resistance or elusion on the part of the husband.

With possession of the package having been surrendered to the husband by the Post Office Department, and with a physical act against him having been involved in the narcotics agent's depriving him of this possession, the court could properly hold that such incidents of seizure against the husband had occurred in Denver as were capable of having a significance beyond or in addition to what had occurred in Kansas City as to require that they be left to the jurisdiction of the court at Denver. And in this situation, although there was not a lack of jurisdiction, to consider the motion to suppress as to the Kansas City incidents, in such evidential significance as it was possible for them to have separable from the subsequent physical seizure made, we do not believe that the court was here required to entertain and rule upon the merits of the motion in this aspect. We think that the court could properly in the circumstances leave the matter in all its aspects to the court at Denver, which, under Rule 41(e), as the court where the husband's trial was to be had, clearly had jurisdiction to consider every ground for suppression which the husband would be able to claim. There cannot in the situation be said to have been any hardship or other prejudice involved in this treatment of the husband's motion, which would impel us to reverse the court's refusal to consider the question on its merits.

For the reasons stated, the wife's case, No. 15,598, is reversed, and the husband's case, No. 15,599, is affirmed.