[Civ. No. 12224. Third Dist. Aug. 7, 1969.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF BUTTE COUNTY, Respondent; GARY JEROME FLYNN, Real Party in Interest.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Jack R. Winkler, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

McPherson, Mulkey & Aisthorpe and Lloyd H. Mulkey, Jr., for Real Party in Interest.

BRAY, J.*—Petition for writ of mandate to compel the Butte County Superior Court to annul its order suppressing certain evidence.

## QUESTION PRESENTED

Was the opening by a postman of the contents of a mailed first-class package, where the outer carton had broken by chance, an unlawful search requiring application of the exclusionary rule?

## RECORD

Real party in interest, Flynn (hereinafter referred to as defendant), was charged in an information filed in Butte County Superior Court with the crime of possession of marijuana. After certain other proceedings,[1] defendant moved to

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Defendant moved the superior court to set aside the information pursuant to Penal Code section 995, practically on the same grounds as urged

suppress evidence. The motion was granted. This petition followed, seeking appellate review pursuant to Penal Code section 1538.5, subdivision (o).

## FACTS

On the morning of July 27, 1968, Grant J. Magill, a United States postman for 11 years, was delivering mail in the City of Chico. When he opened a bundle of mail to put it into his satchel, a first-class package fell out onto the seat of his car. The package measured 4 x 3½ x 5 inches in size. The outside wrapping was addressed from San Francisco to defendant at his Chico address. When the package fell out on the seat the outside wrapping came apart, as did a Carnation Instant Breakfast box wrapped in it, and a brown paper bag fell out of the box. The bag was not sealed in any way. Magill opened the bag and, looking in, saw two plastic bags, each containing green leafy material, which turned out to be marijuana. Magill had not seen any green leafy material until he opened the paper bag. He removed some of this material from the plastic bags and then put the package back together again. Going to the address shown on the package, he asked the man who answered his knock on the door if his name was Flynn. When the man said it was, Magill handed him the package.

Magill went with a police officer to the police station and turned the marijuana over to the police. He then made a written statement and described defendant. Magill was not a police officer or working for the police, nor was he a postal inspector or any kind of law enforcement officer. No one had asked him to watch defendant's home or mail, nor to look inside the package or remove any of its contents. His only instruction was to deliver loose articles found in the mail to his supervisor. No police or postal authorities had instructed him what to do if he found contraband in the mail.

Officer Reese, to whom Magill talked and to whom he gave the written statement, testified that Magill had said that when the package broke open some green substance had fallen out and that the portion which he gave Reese had fallen out. Magill, although he testified he could have so stated, did not

in the motion hereinafter discussed. The motion was denied. Defendant, after pleading not guilty, filed a petition in this court for a writ of prohibition on substantially identical grounds to restrain further prosecution of the charge against him. The petition was denied without hearing October 30, 1968, 3 Civil No. 12140. Petition for hearing in the California Supreme Court was denied November 27, 1968.

recall so stating. In any event, it seems conceded that the marijuana had not fallen out.

Officer Reese then sought a search warrant, signing an affidavit setting forth that the package had been broken in handling, that part of the "contents" had spilled out, and that Magill, looking into the package, had observed a green leafy substance containing seeds. The affidavit further stated that Reese believed that at defendant's home there were two plastic Baggies containing bulk marijuana. A search warrant was issued.

Knocking at defendant's door, which was opened by defendant, Reese handed defendant the search warrant and supporting affidavit and searched defendant's apartment, finding a small amount of marijuana near a Carnation Instant Breakfast carton, a brown wrapping paper bearing a postmark and defendant's name and address, and a brown paper bag containing three plastic bags which contained marijuana.

## IS THE EXCLUSIONARY RULE APPLICABLE?

With exceptions not here applicable, federal law (hereinafter cited) prohibits a postal employee from looking into a first-class mail package. Defendant attacks the validity of the search warrant on the ground that it was based upon an unlawful search and seizure.

A search warrant is invalid if it is obtained upon information which was the product of an unlawful search. (*People* v. *Carswell* (1959) 51 Cal.2d 602, 606, 607 [335 P.2d 99]; *People* v. *Roberts* (1956) 47 Cal.2d 374, 377 [303 P.2d 721].)

In *Byars* v. *United States* (1927) 273 U.S. 28 [71 L.Ed. 520, 47 S.Ct. 248], it was held that evidence illegally obtained was inadmissible in federal court when obtained in a joint operation of federal and state officers. In *Gambino* v. *United States* (1927) 275 U.S. 310 [72 L.Ed. 293, 48 S.Ct. 137, 52 A.L.R. 1381], the evidence was likewise inadmissible where state officers conducted searches and seizures solely to acquire evidence to turn over to federal officials. *Gambino* distinguished *Weeks* v. *United States* (1914) 232 U.S. 383, 398 [58 L.Ed. 652, 657, 34 S.Ct. 341, L.R.A. 1915B, 834], where it had been held that evidence obtained through an unreasonable search and seizure by state officers without any knowledge or cooperation of federal officers was admissible in a federal court. This holding was characterized as the "silver platter" doctrine by Mr. Justice Frankfurter. (*Lustig* v. *United States* (1949) 338 U.S. 74, 79 [93 L.Ed. 1819, 1823, 69 S.Ct. 1372].) In *Elkins* v.

*United States* (1960) 364 U.S. 206 [4 L.Ed.2d 1669, 80 S.Ct. 1437, 1453], this doctrine was overruled and finally in *Mapp* v. *Ohio* (1961) 367 U.S. 643, 657 [6 L.Ed.2d 1081, 1091, 81 S.Ct. 1684, 84 A.L.R.2d 933], the court declared that "the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments" and imposed the exclusionary rule on criminal actions in state courts. *Mapp* clearly indicates that evidence unconstitutionally seized by *federal* agents is inadmissible in a *state* criminal trial. Petitioner, in the instant case, is actually attempting to apply the defunct "silver platter" doctrine.

Section 1538.5 Penal Code provides for a pretrial motion to suppress on the ground, among others, of "violation of federal or state constitutional standards" (subd. (a)(2) (v)). The superior court is required to determine "the validity of a search or seizure de novo on the basis of the evidence presented at a special hearing" (subd. (i)). Under this section "a full hearing is held on the issues before the superior court sitting as a finder of fact." (*People* v. *Heard* (1968) 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374].) This hearing is different from the magistrate's initial determination of the question of whether probable cause exists for the issuance of a search warrant. There, the magistrate may accept the truth of the matters set forth in the affidavit for the warrant. On the motion to suppress, however, it may be shown that the matters stated by the affiant are not true or that the information set forth in the affidavit was obtained in violation of constitutional rights and privileges.

Honorable J. F. Good, the judge below, found in effect that, from the postman's statement to Reese, the latter was justified in believing that when the package broke open, marijuana spilled out and that the portion obtained by the postman was recovered from the seat of the vehicle rather than as a result of the exploratory invasion into the contents of the bag, and that Reese acted in good faith in the allegations he made in the affidavit for the search warrant.

Because Magill opened the paper bag, the judge found that the marijuana in question was not accidentally discovered, but was discovered by an act in clear violation of the federal statutes and postal regulations protecting the privacy of first-class parcels and letters. The judge then said: "The thrust of the Fourth Amendment is not aimed solely at the police or law enforcement agencies of government; it is a guaranty against invasion by any governmental agency of the right of privacy guaranteed

therein.'' The court concluded that sound public policy requires holding that postal employees are included in the class intended to be included in the exclusionary rule insofar as they violate the law and postal regulations in opening first-class mail.

There can be no doubt that, in view of the judge's finding as to what Magill told Officer Reese and the finding that Reese acted in good faith in making the affidavit for the search warrant, probable cause for the issuance of that warrant existed and was shown. ▮ The question we have to determine is whether that probable cause is so tainted by being based upon information obtained by a postal employee's illegal act that contraband obtained through such act must be excluded in a criminal prosecution.

The record fails to disclose Magill's purpose in looking into the paper bag—whether for idle curiosity, or because he felt it necessary to know how fragile its contents were for rewrapping, or for some other reason. In view of a lack of explanation, his action in peering into the bag was prima facie illegal, and the prosecution had the burden of proof of justifying the warrantless search by the postman. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

▮ The protection against unreasonable search and seizure of one's papers or other effects, guaranteed by the Fourth Amendment, extends to their presence in the domestic mails. Thus, first-class mail packages moving entirely within the United States cannot be seized and retained, nor opened and searched, without the authority of a search warrant. (*Ex parte Jackson* (1878) 96 U.S. 727, 732-733 [24 L.Ed. 877, 879]; *Lustiger* v. *United States* (9th Cir. 1967) 386 F.2d 132, 139; *United States* v. *Beckley* (6th Cir. 1964) 335 F.2d 86, 88; *Oliver* v. *United States* (8th Cir. 1957) 239 F.2d 818 [61 A.L.R.2d 1273]; annot., 61 A.L.R.2d 1282 (1958).) The constitutional protection is one implemented by federal penal (18 U.S.C. § 1709) and regulatory statutes (39 U.S.C. § 4057) and by postal regulations (39 C.F.R. § 117.1 (1968)).

It has been held that the true purpose of the exclusionary rule as a deterrent to unconstitutional searching practices is ''. . . to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.'' (*Elkins* v. *United States, supra*, 364 U.S. 206; 19 Stan.L.Rev. 608, 610.)

In *Oliver* v. *United States, supra*, 239 F.2d 818, a wife at Kansas City, Missouri, mailed a package in first-class mail directed to her husband in Denver. A mail carrier who had

been serving also as an undercover agent for the Bureau of Narcotics saw her mail it. He had a speaking acquaintance with her and knew her as a narcotic suspect. He suspected that the package might contain narcotics and so informed the superintendent of the station. The package was opened and inspected. It consisted of a cardboard box containing greeting cards and envelopes. Two of the envelopes contained heroin. In addition to opening the box, it was necessary to unseal the envelopes. After an expert identified the contents of the two envelopes as heroin, removing a sample therefrom, the envelopes were resealed, the package rewrapped and sent on to Denver for delivery. When the husband called for his mail at the post office there, he was arrested. Prosecution of the wife was had in Kansas City; against the husband in Denver. Each filed a motion to suppress in the Kansas City District Court. Their motions to suppress the evidence were denied. On appeal, the reviewing court held that the motion of the wife should have been granted, but refused to reverse the ruling of the trial court on the husband's motion, that court having held that the jurisdiction to hear the husband's motion was in the Denver court. The court held that the protection against unreasonable search and seizure guaranteed by the Fourth Amendment applies to mail and that, as to the wife, the evidence was obtained by an unreasonable search and seizure. The ground upon which the court relied apparently was that under postal regulations postal employees were forbidden to open first-class mail except under circumstances not relevant to the situation in *Oliver,* and that the violation by the postal superintendent of the regulation made the discovery of the heroin unlawful.

While there is a difference between the facts in *Oliver, supra,* and those in the instant case, it is a difference without a distinction. In *Oliver,* the postman was a narcotics agent as well as a postman (although that fact was not used as a basis for the decision), while in the instant case Magill had no police connections. In *Oliver,* the postman did not open the mail package. He merely alerted the postal superintendent, who opened the package, and the ruling is based upon the one fact that the superintendent violated the law and the postal regulations by opening the package. ■ In the case at bench, although there is no indication that Magill suspected the contents of the paper bag, he nevertheless opened it. The opening of the bag was a search. (See *People* v. *Marshall* (1968) 69 Cal.2d 51, 58-59 [69 Cal.Rptr. 585, 442 P.2d 665];

*People* v. *Alexander* (1967) 253 Cal.App.2d 691, 699 [61 Cal. Rptr. 814].) The fact that the package in which it was contained was broken open accidentally did not, so far as the evidence shows, authorize him to open the bag even though it was unsealed. The reasoning of *Oliver* applies to the situation here. This is not a case where the accidental breaking of the package revealed the contraband. It required the act of the postman to violate the law and the postal regulations by opening the closed bag. That first-class mail is sacrosanct is illustrated in *Ex parte Jackson, supra,* 96 U.S. at p. 733 [24 L.Ed. at p. 879] : "No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; . . ."

Petitioner contends that the exclusionary rule is applicable only where the illegal search is made or instigated by police or other law enforcement officers or their agents, whose purpose is to obtain evidence in aid of law enforcement or for use in criminal prosecutions. No authority is cited by petitioner which adopts such rigid limitations. Prior to the evolution of the federal policy of excluding unlawfully seized evidence (*Weeks* v. *United States, supra,* 232 U.S. 383), the United States Supreme Court had held the Fourth Amendment applicable to warrantless searches by "officials connected with the postal service." (*Ex parte Jackson, supra,* 96 U.S. at p. 733 [24 L.Ed. at p. 879].) Subsequently, searches by city housing and fire inspectors seeking possible violations of local health and safety codes were held subject to the Fourth Amendment in *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], and in *See* v. *Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737]. County social workers searching welfare recipients' homes for evidence of ineligibility for such aid were also restricted by the Fourth Amendment in *Parrish* v. *Civil Service Com.* (1967) 66 Cal.2d 260 [57 Cal.Rptr. 623, 425 P.2d 223].

Although neither *Camara* nor *See* nor *Parrish* talked in terms of the exclusionary rule as well as in terms of constitutional illegality, it was held in *Knoll Associates, Inc.* v. *Federal Trade Com.* (7th Cir. 1968) 397 F.2d 530, that the exclusionary rule barred the Federal Trade Commission's use of corporate documents stolen by a private person on behalf of that quasi-judicial regulatory agency for its use in a price discrimination proceeding against the corporation. More specifically, in *Oliver* v. *United States, supra,* 239 F.2d 818, as

hereinbefore shown, the exclusionary rule was applied to the search of a first-class package by the superintendent of a local postal station. The deterrent purpose of the exclusionary rule (*Elkins* v. *United States, supra,* 364 U.S. 206) is as much needed to discourage unauthorized searches by postal employees as it is applicable to illegal quests for criminal evidence. In either case, the invasion of privacy is exactly the same.

*Schwimmer* v. *United States* (8th Cir. 1956) 232 F.2d 855, 861, states: "In general terms, the test to be applied . . . [under the Fourth Amendment on a search and seizure question generally] is whether the thing done or attempted to be done, in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation, when the immediate end sought is considered against the private right affected."

Petitioner contends that the immediate end sought when Magill opened the bag could have been (1) to satisfy his curiosity, (2) to see if the contents had been damaged, (3) to see if the repackaging contemplated and effected would cause further damage to the contents, (4) to do amateur detecting on his own initiative, or (5) to assist law enforcement officers at their request in detecting contraband in the mails. If the motive had been in either the second or third category, there probably would have been no violation of law and we might not have been confronted with any problem. But as we hereinbefore stated, Magill did not claim either motive, and it must therefore be taken as established for the purposes of this proceeding that he violated the law. (*Badillo* v. *Superior Court, supra,* 46 Cal.2d at pp. 272-273.)

Petitioner claims that a postal employee is in the same situation as regards the exclusionary rule as a private citizen (as to whom it has been held that the exclusionary rule does not apply) if he makes what, if made by a police officer, would be an unreasonable search and seizure, provided, of course, that he is not acting under direction of a peace officer. (*People* v. *Botts* (1967) 250 Cal.App.2d 478, 481-482 [58 Cal. Rptr. 412] ; see 19 Stan.L.Rev. 611.) But the postal employee, in possessing and handling the mail, is not acting as a private citizen; he is a government official deprived of any right to discover what is mailed in a first-class mail package except in limited cases.

While California is not bound to follow all of the federal rules as to searches and seizures "if the federal cases indicate needless limitations on the right to conduct reasona-

ble searches and seizures or to secure warrants" (*People* v. *Cahan* (1955) 44 Cal.2d 434, 450-451 [282 P.2d 905, 50 A.L.R.2d 513]), it has been held that state and federal officers are subject to the same standard of reasonableness in search and seizure cases (*Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623]). It would seem to be as reasonable for state courts to uphold the inviolability of first-class mail as for the federal courts to do so.

 In summary, our decision herein rests upon the prosecution's failure to show legal justification for the postman's search. Absent such evidence, that search was unquestionably proscribed by the Fourth Amendment and by federal law. *Oliver* v. *United States, supra,* 239 F.2d 818, indicates that such illegality would result in application of the exclusionary rule in the federal courts. If we were to reach a contrary result, it would resurrect the defunct. "silver platter" doctrine in a special area of governmental activity where the right of privacy should be as sacrosanct as where criminal investigations are involved.

The order to show cause is discharged; the temporary stay which issued herein on February 26, 1969, is ordered terminated; and the petition for writ of mandate is denied.

Friedman, Acting P. J., and Regan, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied October 1, 1969.