[Civ. No. 13064. Third Dist. Aug. 18, 1971.]

CHARLES RICHARD RAYMOND, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Stuart A. Brody for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Daniel J. Kremer and Nelson P. Kempsky, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**FRIEDMAN, Acting P. J.**—Petitioner seeks a writ of prohibition to restrain the superior court from taking further proceedings on an information charging him with marijuana possession. ■ His motion to suppress evidence under Penal Code section 1538.5 was denied by that court. His appropriate remedy is not prohibition, but a writ of mandate directing suppression. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 295 [78 Cal.Rptr. 504, 455 P.2d 432]; *Ojeda* v. *Superior Court,* 12 Cal.App.3d 909, 921 [91 Cal.Rptr. 145].) We so treat it.

Petitioner's 12-year-old son, Bill, discovered marijuana in the dresser drawers of his father's bedroom.. He telephoned the sheriff's office and arranged to meet a representative of the sheriff at his school. Accordingly, Bill and Sergeant Leeper of the sheriff's office conferred in the office of the vice principal of the junior high school attended by Bill. Some months previously, he told the officer, he had gone into his father's bedroom and found seeds and a leafy substance in a dresser drawer. He showed some of the substance to a deputy sheriff who lived nearby. The deputy told Bill that the material was marijuana and disposed of it. Since then, the boy narrated, he had looked into the dresser drawers many times and found hand-rolled cigarettes there along with plastic bags of marijuana. He further reported that his father kept ounce scales in the bedroom. The boy volunteered to get Sergeant Leeper a sample of marijuana from the bedroom but the officer declined until he could ascertain the validity of such a procedure.

The next morning, December 4, 1970, Sergeant Leeper met Bill again. He told Bill it would be legal to have him obtain some evidence. Bill expressed his willingness to get the officer a sample of marijuana from his father's dresser drawer. Bill told the sergeant that his residence was too far away to walk; that he could not get the sample if his mother were home; that she did not go to work until 4 in the afternoon, but might now be out having her hair done. Sergeant Leeper telephoned Bill's house. There was no answer. He then drove Bill to the house. En route the boy asked the sergeant how much he was to get and Leeper indicated an approximate quantity and suggested that he put the marijuana sample into one of his father's plastic bags. When they arrived at the house the officer waited in the car while Bill went inside. In a few moments he came out with a plastic bag containing marijuana seeds and a useable amount of marijuana leaf. Leeper took the boy back to school. He had the sample analyzed by a criminalist, who confirmed its character. Later that day the sergeant signed an affidavit for a search warrant, which incorporated by reference his

written report of the events. A warrant was obtained and executed that afternoon, and a quantity of marijuana and related paraphernalia were seized in petitioner's home.

At the hearing of the suppression motion Bill testified that he was not "supposed" to enter his father's bedroom. He was not asked whether he told Sergeant Leeper of that restriction.

Petitioner's motion to suppress left some uncertainty as to the objective of his motion. Although, strictly speaking, his written motion sought suppression of marijuana taken "by various levying officers," his accompanying points and authorities made it quite plain that the motion sought suppression of the marijuana sample which Bill had delivered to the officer, as well as the contraband later seized under the search warrant.

By restricting government intrusion into the privacy of the family home, the Fourth Amendment conceivably incorporates some elements of the biblical Fifth Commandment. We need not embark on that inquiry because established Fourth Amendment standards adequately dispose of the case. ■ The Fourth Amendment is violated by a warrantless police search of a dwelling when the search's only justification is probable cause to believe that contraband is there. (*Agnello* v. *United States,* 269 U.S. 20, 33 [70 L.Ed. 145, 149, 46 S.Ct. 4]; *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal. Rptr. 585, 442 P.2d 665].) ■ ■ The constitutional guarantee is not violated by a private citizen's entry and search. Here, petitioner's 12-year-old son and the sheriff's sergeant participated in an expedition designed to acquire a sample of contraband from dresser drawers in petitioner's bedroom. Although the private person was the immediate actor, police participation in planning and implementation subjected the expedition and its product to Fourth Amendment demands. (*Stapleton* v. *Superior Court,* 70 Cal.2d 97, 100-102 [73 Cal.Rptr. 575, 447 P.2d 967]; *People* v. *Tarantino,* 45 Cal.2d 590, 595 [290 P.2d 505]; *People* v. *Fierro,* 236 Cal.App.2d 344, 347 [46 Cal.Rptr. 132].) The joint marijuana-sampling foray into petitioner's home was illegal and its product tainted with illegality.

The Attorney General relies upon the substantial evidence rule. He points to a trial court finding that the boy was not a police agent but a voluntary actor whose offer to fetch a sample of his father's contraband was accepted by the police. The deference owed to the trial court's factual finding gives way when the finding is entwined with a constitutionally inacceptable test. (*Lustig* v. *United States,* 338 U.S. 74, 77 [93 L.Ed. 1819, 1822-1823, 69 S.Ct. 1372].) The crux is not the citizen's eagerness but the policeman's involvement. Certainly the boy's activities were voluntary. He responded to his own wishes, however agonized, and not to police

pressure. The decisive factor was the extent of official involvement in the total enterprise. (*People* v. *Fierro, supra.*) The sheriff's sergeant made inquiries which satisfied him of his action's propriety, ascertained that the time was ripe for surreptitious entry, supplied the transportation, described the quantity, waited for the purloined material and made it a basis for a search warrant application. Official participation in the foray was obvious, heavy and undebatable.

The Attorney General correctly abstains from arguing a consent theory. ■ There are cases where a member of the family consents to a police search of jointly occupied premises. (See, e.g., *Vandenberg* v. *Superior Court,* 8 Cal.App.3d 1048 [87 Cal.Rptr. 876].) The police must reasonably and in good faith believe that the third party is authorized to consent; reliance upon the third party's consent is not justified where it is clear that the property belongs to another. (*People* v. *McGrew,* 1 Cal.3d 404, 412-413 [82 Cal.Rptr. 473, 462 P.2d 1].) Here the policeman could not in good faith believe that the boy had authority to fetch a sample of his father's incriminating inventory.

■ A search warrant obtained upon information acquired by an illegal search is itself invalid. (*People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721]; *People* v. *Superior Court,* 275 Cal.App.2d 489, 492 [79 Cal.Rptr. 904].) ■ The Attorney General makes a valiant effort to salvage the warrant. Sergeant Leeper's affidavit, upon which the warrant was issued, contains more than a description of the illegal marijuana-sampling foray into petitioner's home. It describes the boy's prior disclosures to the officer, who—on the basis of these disclosures alone—could truthfully aver that he had reliable information from a citizen-informer, creating probable cause to believe that the house contained contraband. (See *People* v. *Scoma,* 71 Cal.2d 332, 338, fn. 7 [78 Cal.Rptr. 491, 455 P.2d 419]; *People* v. *Baker,* 12 Cal.App.3d 826, 841 [90 Cal.Rptr. 508]; *People* v. *Barrett,* 2 Cal.App. 3d 142, 147 [82 Cal.Rptr. 424].) Thus, according to the prosecution argument, the remainder of the affidavit was adequate, even if its tainted averments are figuratively cut out and removed.

■ We measure this contention by the "fruit of the poisonous tree" rule. Originally enunciated in *Wong Sun* v. *United States,* 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407], the rule was restated with admirable compactness in *People* v. *Kanos,* 70 Cal.2d 381, 386 [74 Cal.Rptr. 902, 450 P.2d 278]: "Evidence will not be excluded merely because it would not have been obtained but for an illegal search if the connection between such evidence and the illegal search has ' "become so attenuated as to dissipate the taint." ' If, however, the connection is not so attenuated and the evidence has been ' "come at by exploitation of that illegality," '

then it is excludable." (See also, *People* v. *Edwards,* 71 Cal.2d 1096, 1105-1106 [80 Cal.Rptr. 633, 458 P.2d 713].)

 Sergeant Leeper's affidavit for the search warrant incorporated by reference a fairly extensive report of his investigative activity. His interviews with petitioner's son played a central part in the investigation and his investigative report. The illegal joint expedition to fetch a marijuana sample from the father's dresser drawer and the sheriff's confirmation of the sample's physical character formed a substantial element in the report. The magistrate had the function of deciding whether the affidavit disclosed probable cause. (*Aguilar* v. *Texas,* 378 U.S. 108, 110-111 [12 L.Ed.2d 723, 725-726, 84 S.Ct. 1509].) He did not prune out the poisonous branches before he made his decision. A reviewing court should avoid exercises of discretion and factual determinations to which the original tribunal has never addressed itself. Neither the superior court nor this court may ignore averments which formed substantial ingredients of the probable cause found by the magistrate. Far from being attenuated by intervening circumstances, the illegal search and seizure formed a substantial, immovable part of the affidavit upon which the search warrant was issued. The search warrant was "come at" by exploitation of the illegality. As a product of the illegal entry, the search warrant was itself tainted with illegality. (*People* v. *Roberts, supra; People* v. *Superior Court, supra.*) The evidence seized under the warrant was inadmissible. The superior court erred by not suppressing it.

Let a peremptory writ of mandate issue directing the respondent court to grant petitioner's motion to suppress evidence received by the sheriff on December 4, 1970, both that obtained prior to the search warrant and that taken under the search warrant.

Bray, J.,* concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied October 14, 1971.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.