UNITED STATES of America, Plaintiff-Appellee,

v.

James F. PHILLIPS, Defendant-Appellant.

No. 72–2170.

United States Court of Appeals, Fifth Circuit.

May 9, 1973.

Kenneth R. Cain, Ozark, Ala., for defendant-appellant.

Ira DeMent, U. S. Atty., David B. Byrne, Jr., Wade B. Perry, Asst. U. S.

Attys., Montgomery, Ala., for plaintiff-appellee.

Before COLEMAN, GOLDBERG and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant was convicted by a jury of violation of 21 U.S.C.A. § 174 (1972), which proscribes receiving, concealing and facilitating the transportation and concealment of a narcotic drug. There are several substantial and close issues which we need not reach because the entire case rests upon an invalid warrantless governmental search of a parcel while in the United States mails. The conviction must, therefore, be reversed and the prosecution dismissed.

On the basis of undisclosed information the postmaster of Ozark, Alabama, was alerted to watch for incoming parcels addressed to James F. Phillips.

A sealed parcel arrived addressed to Phillips at an Ozark street address. It bore a stamped notation "air mail special delivery" and postage in the amount of $1.25 but no notation as to the class of mailing. It weighed 11½ ounces. Postal authorities were of the opinion that the parcel was fourth class matter, which, while in the possession of postal authorities, may be opened for postal inspection without the necessity of a warrant.[1] Santana v. United States, 329 F.2d 854, 856 (1st Cir.), cert. denied, 377 U.S. 990, 84 S.Ct. 1915, 12 L.Ed.2d 1044 (1964). Cf. 39 U.S.C.A. § 4058(a) (1962)[2] and 39 C.F.R. 135.7 (1972).[3] The package was opened by postal officials and found to contain a white powdery substance which, we will assume for purposes of this opinion, the jury properly could have found was a narcotic. Subsequently, after some of its contents were removed, the parcel was rewrapped and delivered to Phillips.

[1]. The search took place on February 19, 1971, after enactment of the Postal Reorganization Act, Pub. Law 91–375, 84 Stat. 719, on August 12, 1970. The validity of that search, however, is controlled by the requirements of the Constitution and by the statutory provisions, and supporting agency regulations, of Title 39, United States Code, which pre-existed the Postal Reorganization Act. See 39 U.S.C.A. (App.1972).

The Reorganization Act did not become effective in its entirety until July 1, 1971. During the interim from the date of enactment to the date of commencement of operations of the new Postal Service (July 1, 1971), the Post Office Department continued to operate under pre-existing statutory grants of authority supplemented by those grants contained in the Reorganization Act which became effective before the Postal Service commenced operations. Section 3 of Pub.Law 91–375, 84 Stat. 773, which became effective July 1, 1971, provided that: "The classes of mail, the rates of postage, and fees for postal service prescribed by law or regulation made or adopted prior to the effective date of subchapter II of chapter 36 of Title 39, United States Code, as enacted by section 2 of this Act, shall be in effect according to the terms of such law or regulation until changed in accordance with such subchapter."

The section of the Reorganization Act enacted as 39 U.S.C. § 3623, see Pub.Law 91–375, 84 Stat. 761, which became effective January 20, 1971, is merely a directive authorizing the Postal Service to request the Postal Rate Commission appointed by the President under 39 U.S.C. § 3601, to make recommendations on classes of mail and rates. The government's supplemental brief states that the Commission did not submit recommendations until January 18, 1973, and that as of March 1, 1973, no new regulations had been promulgated incorporating these recommendations.

[2]. "The Postmaster General may prescribe the manner of wrapping and securing mail not charged with first class postage so that the contents of the mail may be easily examined. He shall charge the first class rate of postage on all matter which cannot be examined easily."

[3]. "Sealing
"Fourth-class mail must be wrapped or packaged so that it can be easily examined. Mailing of sealed parcels at the fourth-class rates of postage is considered consent by the sender to postal inspection of the contents. To assure that their parcels will not be opened for postal inspection, customers should, in addition to paying the first-class rate of postage, plainly mark their parcels First Class or with similar endorsements."

■ While fourth class matter is subject to opening for postal inspection, the fourth amendment protects first class mail from warrantless opening for postal inspection, and that constitutional limitation has been carried forward into a statute. Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877 (1877); Oliver v. United States, 239 F.2d 818 (8th Cir. 1957); Webster v. United States, 92 F.2d 462 (6th Cir. 1937); Lustiger v. United States, 386 F.2d 132, 139 (9th Cir. 1967), cert. denied, 390 U.S. 951, 88 S. Ct. 1042, 19 L.Ed.2d 1142 (1968); United States v. Van Leeuwen, 414 F.2d 758 (9th Cir. 1969), and 39 U.S.C.A. § 4057 (1962).[4]

■ The basis for the opinion of postal authorities that the package was fourth class matter was unclear at trial and no clearer in the government's brief or at oral argument of this appeal. The fee for special delivery service was 45 cents.[5] Postal officials explained that they deducted this amount from the postage of $1.25, leaving 80 cents, which is the minimum fee for any air parcel post package, irrespective of class, weighing less than one pound. 39 U.S. C.A. § 4303(d)(1) (App.1972). A postal inspector was permitted to testify as an expert, over objection, that in his opinion, based upon his experience and postal laws and regulations, the parcel was fourth class.[6] The great, and unexplained, leap in logic by the government and its witnesses is the implicit assumption that a sealed package sent air parcel post is neither first class matter nor

entitled to the same privacy as first class matter, and instead, as an affirmative proposition, is fourth class matter. We say "as an affirmative proposition," because under familiar principles the burden was upon the government to establish that it had the right to make a warrantless search.[7]

Under 39 U.S.C.A. § 4251(a) (App. 1972) first class mail consists of:

[M]ailable (1) postal cards, (2) post cards, (3) matter wholly or partially in writing or typewriting [with certain exceptions], (4) bills and statements of account, and (5) matter closed against postal inspection.

Fourth class mail consists of mailable matters:

(1) not mailed or required to be mailed as first class mail;

(2) within the size and weight limits prescribed for fourth class mail;

(3) not entered as second class mail.

39 U.S.C.A. § 4551(a) (1962). Second and third class classifications have no arguable relationship to this parcel or this case.

In 1967 Congress amended the postal laws so as to eliminate the preexisting service for heavier [i. e., in excess of eight ounces] "air mail of the first class," see 39 U.S.C.A. § 4303(d)(2) (1962), repealed by Pub.Law 90–206, Title I, § 102(b)(2), 81 Stat. 614 (Dec. 16, 1967), and so as to establish a new and lower rate for some first class mail items.[8] It did so by blending into one enactment the preexisting concept of

---

4. "Opening first class mail

   "Only an employee opening dead mail by authority of the Postmaster General, or a person holding a search warrant authorized by law may open any letter or parcel of the first class which is in the custody of the Department."

5. Special delivery service is available for any class of mail, 39 U.S.C.A. § 6006 (1962), so the use of that service has no value as an indicator of the class of the parcel.

6. It was error to permit this conclusory testimony on what was either a question of law or a mixed question of law and fact. Additionally the prosecution's presentation

—through conclusory expert testimony— of its claim to a right to make a search without warrant insulated the government from having to point out to the court the statutes, regulations and case law which would have brought to the surface the questions of law involved.

7. It is not claimed, and indeed it cannot be claimed, that there were exigent circumstances which would have prevented the government's obtaining a warrant before the parcel was delivered.

8. While at the same time reducing from eight to seven ounces the maximum weight for "domestic air mail," compare 39 U.S. C.A. § 4303(a) (App.1972) with 39 U.S.

"air parcel post" and the eliminated service for "air mail of the first class" and by providing in 39 U.S.C.A. § 4253(b) (App.1972) that "[f]irst class mail weighing more than thirteen ounces shall be mailed at the rates of postage established by section 4303(d) of this title [the rates for air parcel post] and shall be entitled to the most expeditious handling and transportation practicable." The pertinent legislative history of the 1967 amendments reveals the following:

*Air parcels*

The rate on air parcels, now mailed at a zone rate, is revised. Beginning with the effective date of the postal provisions of this legislation, airmail weighing more than 7 ounces and first-class mail weighing more than 13 ounces will be combined as *one class of mail* and will be delivered by the most expeditious means of transportation available.

This is a significant departure from the present method of determining *class of mail* and postage rates for heavier parcels. Because of the significantly high cost coverage of heavy first-class and airmail parcels, the Post Office Department has recommended and the committee and the House of Representatives have ap-

proved a new rate schedule combining these two kinds of heavy mail at a zone rate schedule which is generally lower than present rates for air parcel post or first-class mail. A particular benefit to the public will be the 80-cent nationwide airmail rate for any parcel weighing 1 pound.

2 U.S.Code Cong. & Admin.News, 90th Cong. 1st Sess.1967, p. 2258 at 2262 (emphasis added).

Prior to these 1967 amendments the separate concepts of "air parcel post" and of classes of mail had proceeded along lines of development that were uncorrelated, and at times contradictory.[9] We do not find in the pre-1967 statutory development of the air parcel post concept any guidance on the question of whether the search of the instant parcel violated the fourth amendment.

■■ We conclude that this sealed air parcel sent under the new "one class of mail" could not be opened without a warrant. We reach that conclusion as a matter of law by examining the 1967 amendments in the light of the fourth amendment and of the pre-1967 implementation of that amendment by Congress in the field of postal matter. The beginning point is the Constitution itself and the rights of privacy protected

C.A. § 4303(a) (1962), and raising the minimum weight for "air parcel post" from seven to eight ounces, *compare* 39 U.S.C.A. § 4301(2) (App.1972) *with* 39 U.S.C.A. § 4301(2) (1962). Congress also established new rates for air parcel post. 39 U.S.C.A. § 4253(b) (App.1972).

9. Thus see the legislative history to 39 U.S.C. § 4302 (1964), contained in the official revision notes thereto:

"Since only one schedule of rates is applicable to air parcel post, the laws which distinguish as between treatment of the various classes of mail are inappropriate to air parcel post. Paragraph 10 of section 475 of title 39 is intended to cover this situation. The subsection clarifies this situation by stating that the Postmaster General shall provide for the special return and for the special services for air parcel post."

and the legislative history to 39 U.S.C. § 4301 (1964):

"This definition of domestic air mail is derived from the matter preceding the proviso in section 462a. The proviso is covered by section 4304 of this title.

"The definition of air parcel post is derived *from section 475 of title 39.*

"Chapter 13 of title 39 contains three definitions relating to air mail. Section 462 defines air mail as 'first class mail' at the special air mail rate; 462a defines 'domestic air mail' as embracing 'all mailable matter being transported as mail by air' and section 469 defines air mail as 'mail of any class' at the air mail rate when used in relation to sections 463 and 469f of said chapter; section 463 which fixed postage rates is superseded by section 463a and section 469f is an obsolete section dealing with claims on annulled air mail contracts."

S.Rep.No.1763, 86th Cong., 2d Sess. 58 (1960).

*Compare* 39 U.S.C. § 462 (1952 ed.) *with* 39 U.S.C. § 462a (1952 ed.) and 39 U.S.C. § 469 (1952 ed.).

by the fourth amendment. The constitutional guaranty is implemented at least in part by the statutory scheme for classification of mail into—insofar as here applicable—first and fourth class matter; the statute forbidding the warrantless opening of a first class item;[10] and the supporting regulations that prescribe how first class matter shall be wrapped and marked and how fourth class matter shall be wrapped. 39 C.F. R. §§ 131.2(3) and 135.7 (1972). Ambiguities may arise, such as the sender's sealing a parcel, which should require it to go as first class matter, 39 U.S.C.A. § 4251(a)(5) (App.1972), but paying only fourth class postage, or, hypothetically, paying only fourth class postage but writing on the parcel "Do not open for postal inspection." Such ambiguities cast doubt on the proper classification of the item and on the intent of the sender as well. But, indisputably, the privacy of a sealed item bearing the proper amount of postage for a first class item is protected from warrantless opening, not because it is given the appellation "first class" but because the Constitution commands that result. Nothing in the

legislative history of the new "one class of mail" suggests that an item possessing the characteristics that had entitled it to the privacy protected by the fourth amendment (and thus formerly to first class status) was intended to have a lesser scope of privacy by being recharacterized as within the new "one class" and sent at a new rate lower than the first class rate. Indeed, for items sealed against postal inspection, Congress probably could not constrict the scope of privacy without abrogating the fourth amendment.

An argument can be made that any parcel sent in the new class, sealed or unsealed,[11] is entitled to be treated as though first class mail and exempted from warrantless opening.[12] But we leave determination of that question to some other case in which the issue is squarely raised and adequately presented.[13]

We have reached the conclusion that, as a matter of law, this sealed air parcel should not have been opened without a warrant. There are alternative grounds commanding the same result. First, the

---

10. 39 U.S.C.A. § 4057, (1962) quoted in footnote 4, *supra.*

11. If the post office accepts such parcels unsealed, a matter as to which we are not informed.

12. The argument would run this way. (1) Accepting that Congress did not, and probably could not, by creating the "one class of mail," extend less privacy than formerly extended to first class mail exceeding 13 ounces, it would be anomalous to conclude that Congress intended a lower status for the other types of items—air mail parcels—also included in the "one class of mail." Both types of items pay the same rate and are handled in the same manner. And the legislative history, quoted above, is in terms of "one class." (2) The classifications for mail established by other provisions of the United States Code are second and third class. They have no relevance here. Congress would not have intended to import fourth class standards into the "one class of mail." The new class begins at "in excess of 7 ounces." The minimum weight of a fourth class parcel is 16 ounces. 39 U.S.C.A. § 4551 (1962) and 39 U.S.C.A. § 4552(a)(2) (App.

1972). The standards of fourth class, previously restricted to only larger parcels, would hardly be extended by implication, and without any supporting evidence of intent, to smaller parcels as well.

13. In a case remarkably similar to the one before us, a United States District Court and the Eighth Circuit have reached the conclusion that air parcel post *is* first class matter. Collins v. Wolff, 337 F. Supp. 114 (D.Neb.1972), aff'd, 467 F.2d 359 (8th Cir. 1972). The linchpins of their decisions are first, that after 1967 air parcel post must carry the same postage as first class matter, and, second, that the rate of postage determines whether or not a parcel is first class. We do not adopt that reasoning, because, while the rate for air parcel post and first class items over 13 ounces is the same after 1967, it is not the first-class rate. As the congressional history pointed out, the new and lower rate for the "one class of mail" is lower than previous rates for air parcel post and first class mail (and, of course, lower than the increased rates for first class and air mail).

burden of proof was upon the government to establish its right to make a warrantless search of a private parcel. The government has not discharged that burden but has merely assumed that the matter was settled by the opinion of one of its employees that the parcel was fourth class. Second, even if it is assumed *arguendo* that an air parcel sent with correct postage under the new rates can have a classification other than first class matter, and need not enjoy the privacy extended to first class matter, the only other status into which this particular parcel could arguably fall would be fourth class. But the statutes concerning classes of mail and the empirical facts make clear that this parcel was not fourth class. It was sealed, and as already pointed out, it was below the minimum weight for fourth class. While it did not bear first class postage but instead carried the postage of the new rates for the "one class of mail," the amount of postage exceeded that for fourth class parcel post. 39 U.S.C.A. § 4556 (App.1972).

The case is reversed with directions to dismiss the indictment.