STATE OF NEBRASKA, APPELLEE, v. TONY A. HUERTA, APPELLANT.

214 N. W. 2d 613

Filed February 7, 1974. No. 39131.

E. Dean Hascall of Hascall, Jungers & Pelton, for appellant.

Clarence A. H. Meyer, Attorney General, and Betsy G. Berger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

A jury found the defendant, Tony A. Huerta, guilty

of robbery. He was sentenced to a term of imprisonment of 9 to 20 years. His appeal involves issues as to the admission of a shotgun as demonstrative evidence and photographic identifications of the defendant.

At about 9 p.m., on October 2, 1972, four masked men entered the Richfield Cafe in Richfield, Sarpy County, Nebraska. They were armed with a shotgun, a knife, and a mallet. A short heavy-set man of dark complexion with long bushy hair and wearing a colored checked shirt, later identified as the defendant, guarded the door with the shotgun while the other three took the proprietor's billfold, and the cash from the cash registers in the cafe. They got $329.16. The proprietor, his wife, an employee, and four patrons witnessed the robbery.

The robbers left the cafe and drove a noisy red car out of town going south. The police were called and descriptions of the robbers broadcast on the police radio. Between 9 and 9:30 p.m., a "loud" car drove into a farm-yard, circled in the yard, and stopped at the end of the lane. The farm was approximately half a mile south and three-quarters of a mile east of Richfield. The farmer watched the five occupants working on their red car at the end of his driveway in the light of the yard light. He became suspicious when they hid from a passing car. The farmer's wife called the sheriff. Officers arrived shortly and parked down the road. The farmer fired two shots in the air to alert the officers. Four of the five occupants of the car fled on foot through fields south of the farm house. The fifth occupant, Tom Cecetka, stayed in the car and was arrested at the scene. Pieces of the blanket used for masking were found strewn along the road and one piece was in the car. Cecetka gave the names of the others to the officers. Meanwhile, efforts were made to track the fugitives with dogs. At around midnight four men were pickd up walking along a road in the vicinity. The names given matched the names which had been given to officers by Cecetka, and the

four were arrested. A knife was found on the person of one man named Griger, and a total of approximately $300 in cash was taken from the four men, most of it from Griger.

On the morning after the robbery some distinctive red helmets similar to those worn in the robbery, and a shotgun similar to that used in the robbery, were found. They were lying alongside the tracks of the fugitives in the field near the farm house lane.

At the trial, Cecetka identified all the defendants and testified as to their participation in the planning and carrying out of the robbery. The proprietor of the cafe, his wife, their employee, and two of the patrons in the cafe at the time of the robbery identified the defendant Huerta in court as the man holding the shotgun during the robbery. One or more witnesses also identified in court each of the other defendants as a participant in the robbery.

The first contention of the defendant on appeal is that the admission in evidence of the shotgun found along the path of flight was improper and prejudicial to the defendant Huerta. The finding of the shotgun along the flight path of the robbers was probably enough in itself to make the gun admissible but there was considerably more than that. Each of the eyewitnesses to the robbery testified that one robber had a shotgun with a long barrel. Most of the witnesses identified it as a .410 like the one offered in evidence. Cecetka testified that the robbers had picked up a .410 shotgun at the house of one of the defendants before the robbery. When a fact in issue may be explained by the production of an article or object to which testimony relates, it is proper to bring such article or object into court and exhibit it to the jury. The fact that the evidence connecting the article to the crime is largely circumstantial does not make the article irrelevant nor inadmissible. Even if there were some doubt about the admissibility of the shotgun, the issue is

foreclosed because no objection was made when the gun was offered and received in evidence. The failure to object promptly to an offer of evidence waives the objection. State v. Sanders, 190 Neb. 625, 211 N. W. 2d 412.

The defendant also contends that some pretrial photographic identification procedures were so suggestive as to taint any in-court identification, and deny the defendant due process of law.

The evidence as to any prior photographic identification was produced almost entirely by the defendant in cross-examination. That evidence indicated that after Cecetka had named the four individuals, a set of 7 to 8 black and white pictures of men in suits and ties were drawn from police files and shown to Mr. and Mrs. Peterson and to Mrs. Wilkins sometime before midnight. Pictures of the defendant Huerta and of DeLoa and Shiller, the defendants who were tried jointly with him, were included in this group. None of them were identified.

Colored polaroid photographs of the four men arrested were taken sometime after midnight on the night of the robbery and were shown to the same three individuals at around 2 or 2:30 a.m., along with two other photographs, one a black and white photograph of a white man about 6 feet tall and another colored picture mounted on a stiff backing. Mr. Peterson recognized two individuals. Mrs. Peterson noted that the clothing in the pictures of the four defendants was the clothing she had described to officers following the robbery. She also recognized Griger.

The general descriptions given by Mr. and Mrs. Peterson and Mrs. Wilkins to the deputy sheriff shortly after the robbery identified the robbers as two white men and two Mexicans, one fat and shorter than the others. The shorter one was heavy set, half Indian and half Mexican, with long bushy black hair and wearing a colored checked shirt or jacket. This individual was identified

as the one with the shotgun. A second robber had the knife and was a white man with long hair, wearing glasses, a red shirt, and red helmet. The third robber had long blonde hair and was wearing a red helmet. The fourth robber was slender and of dark complexion and had long dark hair. The robbers had masks over the bottom portion of their faces. Some witnesses noted that the masks were over the mouths but the noses could be seen, as well as the upper portions of their faces.

The eyewitnesses who made in-court identification of the defendants were obviously relying upon physical observation and voice identification during the actual robbery more than upon photographs shown to them at a time shortly after the robbery. Some of the eyewitnesses to the robbery could not and did not specifically identify any of the defendants. It should be noted also that aside from any eyewitness identification there is extensive and substantial evidence of defendant's guilt.

In determining whether or not photographic identification procedures have been impermissibly suggestive, the question must be determined by an evaluation of all the surrounding circumstances. There is no right to counsel at a pretrial photographic identification. State v. Tramble, 187 Neb. 488, 191 N. W. 2d 822.

Each case must be considered on its own facts and a conviction based on eyewitness identification at trial, following pretrial identification by photograph, will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. State v. Randolph, 186 Neb. 297, 183 N. W. 2d 225; Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247.

Even though an in-court identification may have been tainted by an impermissibly suggestive out-of-court photographic identification, the in-court identification may properly be received if it has an independent source.

State v. Cannon, 185 Neb. 149, 174 N. W. 2d 181.

In this case the possibility of misidentification stemming from any impermissibly suggestive identification procedures was minimal. Any potential for error in such procedures was fully exposed to the jury in cross-examination by defendant's counsel.

The judgment of the District Court is affirmed.

AFFIRMED.

SMITH, J., not participating.