**UNITED STATES of America**

v.

**Glenn Mark FISHER and Donna Lee Fisher.**

**No. CR–1972–21.**

United States District Court, W. D. New York.

May 29, 1974.

---

John T. Elfvin, U. S. Atty., Buffalo, N.Y. (Roger P. Williams, Buffalo, N.Y., of counsel), for the Government.

Doyle, Diebold & Bermingham, Buffalo, N.Y. (Joseph D. Bermingham, Jr., Buffalo, N.Y., of counsel), for defendants.

CURTIN, Chief Judge.

The defendants in this case are charged with one count of possession, with intent to distribute, 43 grams of cocaine in violation of Section 841(a)(1) of Title 21, United States Code.

The defendants have moved to suppress the fruits of a search of 770 West Ferry Street, the premises occupied by Glenn Mark Fisher and Donna Lee Fisher, conducted pursuant to a search warrant. The suppression hearing was held before the Honorable John O. Henderson. Upon his death, this file was transferred to my part. Counsel have appeared before the court and agreed that the present motion is ready for decision and no further briefing or oral argument is necessary. The court has reviewed the transcript and the briefs supplied by the parties. The following constitutes the court's findings of fact and conclusions of law.

At the suppression hearing it developed that in early August, 1971 a police informant who had provided reliable information in the past focused attention upon Glenn Fisher as a narcotics dealer. Later the same month two additional informants in Arizona named him as a dealer of narcotics in Buffalo. In September, 1971 another informer provided similar information. On the strength of these informers' tips, Bureau of Narcotics and Dangerous Drugs [BNDD] agents placed the defendants' home under surveillance. On two occasions persons suspected of being involved in narcotics traffic were seen entering or leaving the premises. Thereafter, these agents obtained an order allowing a mail cover to be placed on all mail addressed to the defendants' residence. On September 24, 1971 that mail cover went into effect and postal officials began to

note the name and address of the sender of any mail sent to the address in question, as well as the type and class of mail. The mail cover also ordered that Postal Inspector Harm be notified upon receipt of any parcel.

. On October 18, 1971 a package weighing 11½ ounces, bearing $1.00 in postage, marked "Air Mail" and addressed to the daughter of the defendants, was received at the post office station that delivered defendants' mail. The package did not bear a "first class mail" stamp or any other marking designating it as first class mail. The postal inspector testified that when he was notified by telephone that the package had arrived, he picked it up, returned to his office and opened the package. It contained a stuffed toy bull. He observed that the lining of the toy appeared to be resewn. He cut open the toy and discovered eight manila envelopes and one plastic envelope, which were later determined to contain cocaine.

Based upon the foregoing, BNDD agents arranged for a controlled delivery of the package. Once the package was delivered, the mail carrier notified BNDD agents who then applied for and obtained a search warrant for the premises at 770 West Ferry Street. A search pursuant to that warrant revealed the packages of cocaine in an upstairs bedroom of the premises, and the toy bull and wrappings in the living room.

The constitutionality of the search and seizure in question depends upon the legality of the initial administrative search of the package by the postal inspector. Defendants contend that the warrantless search of the package by the postal inspector violated their fourth amendment rights because the package was first class mail, or entitled to the protection of first class mail. The government contends, however, that since the package bore no first class mail endorsement, it was properly treated by the postal inspector as fourth class mail, subject to postal inspection without a warrant. 39 C.F.R. § 135.7.

It is not disputed that the fourth amendment protects first class mail from warrantless search by postal inspectors. *See* United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877 (1878); 39 U.S.C. § 3623(d); 39 U.S.C. § 4057; 39 C.F.R. § 115.1.

The postal inspector's rationale for considering the package in question to be fourth class mail is somewhat unclear. In an exchange with the court, Inspector Harm stated that he could tell that the package was fourth class by the postage and by its appearance. When pressed by the court, however, he stated that when a package like the one in question is mailed, "the clerk would probably ask you if you wanted to send it first class. If not it would go at the lower rate." (Tr. at 51.) On cross-examination, Mr. Harm stated that the package in question was sent by the most expeditious means possible. He admitted that because it was an air mail item in excess of nine ounces, the package was sent by "priority mail," and the postage paid and mode of handling is the same as first class mail. The only distinguishing feature relied upon by Inspector Harm for his conclusion that the package was fourth class is the absence of the first class mail endorsement. Such an endorsement would be placed upon the package at the sender's request, but not without it.

In United States v. Phillips, 478 F.2d 743 (5th Cir. 1973), postal regulations came under review in a case remarkably similar to the instant case. There a warrantless search had been conducted of a package suspected to have contained drugs. The package bore a stamp "air mail special delivery" and $1.25 in postage, but no notation as to the class of mailing. It weighed 11½ ounces.

The *Phillips* court reviewed the 1967 amendment to the postal laws and the legislative history in connection therewith. It concluded that Congress had intended to create a new class of mail for certain air parcels. Prior to 1967

there existed a distinction between "air parcel post," which was sent at a fourth class rate, and "air mail of the first class" weighing in excess of eight ounces. *See* 39 U.S.C. § 4303(d)(1) and (2) (1962). That distinction was eliminated by the 1967 amendments. The concept of air parcel post was carried on as domestic air mail of any class in excess of seven ounces. Of greater significance is the fact that first class mail in excess of thirteen ounces now travels at the same rate as air parcel post and is "entitled to the most expeditious handling and transportation practicable." 39 U.S.C. § 4253(b) (App.1972). This is a rate based upon the establishment of certain zones and is lower than the rates for air parcel post or first class mail.[1]

The court in *Phillips* concluded that the 11½ ounce package in question, sent under the new "one class of mail" could not be opened without a warrant. The court stated:

> [T]he privacy of a sealed item bearing the proper amount of postage for a first class item is protected from warrantless opening, not because it is given the appellation "first class" but because the Constitution commands that result. Nothing in the legislative history of the new "one class of mail" suggests that an item possessing the characteristics that had entitled it to the privacy protected by the fourth amendment (and thus formerly to first class status) was intended to have a lesser scope of privacy by being recharacterized as within the new "one class" and sent at a new

rate lower than the first class rate. Indeed, for items sealed against postal inspection, Congress probably could not constrict the scope of privacy without abrogating the fourth amendment.

478 F.2d at 748.

■■ This court concludes that the rationale of the court in *Phillips* applies with equal force to the facts of this case. It should be noted that the package in question bore $1.00 in postage. Since May of 1971 the minimum rate for priority mail has increased from 80¢ to $1.00. As such, it now exceeds the maximum first class rate of 96¢. *Compare* 39 C.F.R. § 136.1 with 39 C.F.R. § 131.1. We have, therefore, a situation where the sender paid postage in excess of the first class rate, sealed the package and sent it by a class of mail that travels under a priority status by the most expeditious means possible. In addition, the burden of proof was upon the government to establish its right to make a warrantless search of the parcel in question. It is the view of this court that the government cannot carry that burden by merely assuming that the matter is settled by the determination of one of its employees that the package was in fact a fourth class package. The government has contended that air mail is not a classification, but is merely a service, and that a package sent air mail may be classified into any applicable class. Assuming that to be true, the only possible classification other than first class into which this particular parcel could fall would be fourth class. However, the statutes concerning classes

---

1. Air parcels

The rate on air parcels, now mailed at a zone rate, is revised. Beginning with the effective date of the postal provisions of this legislation, airmail weighing more than 7 ounces and first-class mail weighing more than 13 ounces will be combined as one class of mail and will be delivered by the most expeditious means of transportation available.

This is a significant departure from the present method of determining class of mail and postage rates for heavier parcels. Because of the significantly high cost coverage of heavy first-class and airmail parcels, the Post Office Department has recommended and the committee and the House of Representatives have approved a new rate schedule combining these two kinds of heavy mail at a zone rate schedule which is generally lower than present rates for air parcel post or first-class mail. A particular benefit to the public will be the 80-cent nationwide airmail rate for any parcel weighing 1 pound. 2 U.S.C.Cong. and Admin.News p. 2258 at p. 2262 (1967).

of mail and the facts in this case clearly indicate that this parcel was not fourth class. It was sealed and it was below the 16-ounce minimum weight for a fourth class package. *See* 39 U.S.C. § 4552(a)(2) (App.1972). For the foregoing reasons, this court concludes that the search and seizure of the premises at 770 West Ferry Street were conducted in violation of the defendants' fourth amendment rights and the fruits of that search are, therefore, suppressed.

So ordered.