Steven J. HOGAN, Petitioner,

v.

The STATE OF NEBRASKA, and Vernon Newbold, Sheriff of Buffalo County, Nebraska, Respondents.

No. CV75-L-98.

United States District Court,
D. Nebraska.

Oct. 31, 1975.

---

Kirk E. Naylor, Jr., Lincoln, Neb., for petitioner.

Jerold V. Fennell, Sp. Asst. Atty. Gen., State of Nebraska, Lincoln, Neb., for respondents.

## MEMORANDUM

VAN PELT, Senior District Judge.

Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241 et seq., contending that his conviction and subsequent imprisonment for possession of cocaine and marijuana violated his Fourth Amendment and Sixth Amendment rights under the United States Constitution.

The petitioner on September 14, 1974, following trial by jury, was found guilty of the felony offense of possession of cocaine, and the misdemeanor offense of marijuana possession. He was sentenced September 24, 1974 to 95 days imprisonment in the Buffalo County jail on the marijuana charge and 90 days on the cocaine charge, the sentences to run consecutively. This conviction was affirmed by the Nebraska Supreme Court in *State v. Hogan*, 194 Neb. 207, 231 N. W.2d 135 (1975). The petitioner has served only a portion of his sentence. He was released on bail during his appeal to the Nebraska Supreme Court, and bail was also granted by this court pending the outcome of the instant proceedings.

The Nebraska Supreme Court opinion by Justice McCown contains an adequate

statement of the facts leading to the petitioner's arrest and conviction. This opinion will only develop those needed to fully discuss the issues raised.

The petitioner contends his rights were violated in at least two respects:

First, the search by the U. S. Customs Inspector of the letter, Exhibit 3–A, addressed to him was unreasonable and undertaken without sufficient articulable facts to support a belief that it contained unlawful contraband. He argues that any evidence seized subsequent to the letter search should have been suppressed.

Secondly, three letters from South America were received into evidence in violation of his Sixth Amendment right to confrontation and cross-examination of witnesses against him.

Turning first to the question of the legality of the customs search and the subsequent search in Kearney, Nebraska, the Court must disagree with the petitioner's position.

■ The opening of the letter addressed to the petitioner was not the type of search ruled *per se* unreasonable in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It is, in fact, one of the "specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Border searches have long been recognized as unique exceptions to the Fourth Amendment's requirement that searches of private property be supported by probable cause and prior judicial approval. Customs officials and border officers may conduct warrantless searches of persons and mail entering from foreign points. Probable cause is not required to support such invasions. The officer need only have a reasonable suspicion of illegal activity. 19 U.S.C. § 482 (1965); *United States v. Doe*, 472 F.2d 982 (2nd Cir. 1973), *cert. denied*, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973); *Klein v. United States*, 472 F.2d 847 (9th Cir. 1973); *cf. Carroll v.*

*United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

Although the petitioner agrees that reasonable suspicion is sufficient to support a "border search" of incoming mail, he contends there must be a showing by the custom officials that their reasonable suspicion was based on sufficient articulable facts. He further contends that if they are unable to establish these facts, the subsequent search warrant, which was based on the border search, must be ruled invalid and evidence gained as a result thereof suppressed.

According to this theory, the burden of proving the reasonableness is on the government. There is some authority for this position. *United States v. Diemler*, 498 F.2d 1070 (5th Cir. 1974); *State v. Newell*, 506 F.2d 401 (5th Cir. 1975); *United States v. Various Articles of Obscene Merchandise, Schedule No. 896*, 363 F.Supp. 165 (S.D.N.Y. 1973). However, it seems the weight of authority is to the contrary.

■ Under the doctrine originally announced in *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), the initial burden of establishing that an illegal search has taken place is on the party moving for suppression. *Hawkins v. Bennett*, 423 F.2d 948 (8th Cir. 1970). It is only after this initial burden has been met that the ultimate burden of persuasion shifts to the prosecution to show the error was harmless or that subsequent evidence was free from the taint of the illegal search. *Bailey v. MacDougall*, 392 F.2d 155 (4th Cir. 1968). For further authority supporting this view, *see, United States v. Wright*, 468 F.2d 1184 (6th Cir. 1972); *Murray v. United States*, 333 F.2d 409 (10th Cir. 1964); *United States v. Wade*, 388 U.S. 218, 240, n. 31, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *United States v. McDonnell*, 315 F.Supp. 152 (D.Neb.1970).

If the search involved in this case had not been a border search, it could well be contended that the petitioner met his

burden merely by showing the lack of a search warrant. *See, Coolidge v. New Hampshire, supra*; *United States v. Marshall*, 488 F.2d 1169 (9th Cir. 1973); *United States v. Bazinet*, 462 F.2d 982 (8th Cir. 1972); *United States v. Fisher*, 377 F.Supp. 1298 (D.C.N.Y.1974). However, Congress has placed a stamp of legality and approval on warrantless border searches by enacting 19 U.S.C. § 482.

■ The petitioner, to meet his burden of proving an illegal search, must present sufficient evidence to show the unreasonableness of the custom inspector's action. The only evidence presented on this issue was the testimony of a Nebraska postal inspector who testified at the preliminary hearing that there was nothing unusual about the letter. At trial, however, he testified there was an unusual thickness to the letter. Other evidence presented at trial established that the letters were opened "during usual examination of mails under Obscenity Program" which apparently was in accordance with 19 C.F.R. § 162.7; 19 U.S.C. § 482 and 19 U.S.C. § 1305. The petitioner's evidence is not sufficient to prove this examination was unreasonable. Therefore, this Court finds, as did the Nebraska Supreme Court, that the opening of the letter by United States Customs officials was reasonable and the subsequent search warrant based thereon was valid.

Petitioner also claims error in the receipt in evidence of three letters, Exhibits 3, 6 and 7, each bearing a Columbia stamp and postmark.[1] The Nebraska Supreme Court took the position with reference to what it terms Exhibit 3 that it was not objected to at the trial

and thus that it did not need to consider the issue of its admissibility.

Petitioner claims that his counsel made a continuing objection at the beginning of the trial and that the Supreme Court was in error in its statement that no objection was made. It is thus necessary to examine the transcript (petitioner's Exhibit 4.)

At the opening of the trial, as shown by page 2 of the transcript, counsel for petitioner stated:

"  .  .  .  we would ask to be allowed at this time to interpose a continuing objection that would carry throughout the course of the trial; that it would not be necessary to reiterate in the courtroom, with respect to this letter from Columbia on the grounds, first of all, that they are, we feel clearly, hearsay and that they violate the Defendant's constitutional rights to confront the witness that they represent and also to cross examine that witness."

The Court stated to the County Attorney: "You have no objection to that continuing objection?" and received the reply: "No, we don't, Your Honor." The Court then stated that it would be considered in effect on all those offers "we made, so it will not have to be made in each particular time that any of these letters are offered." With respect to the admission of these letters, the Nebraska Supreme Court says:

"The defendant contends that four letters designated as exhibits 3, 6, 7, and 8 were hearsay and therefore incompetent and inadmissible. Exhibit 3, and letter containing the cocaine, was not objected to at trial and it is unnecessary to consider the issue of

---

1. While frequent reference is made to Exhibit 3, there actually is no Exhibit 3 as such. In the state court the envelope of the letter containing the cocaine was identified as Exhibit 3–A. In this case it is petitioner's Exhibit 5A. The letter enclosed in envelope 3–A was marked Exhibit 3–B. In this case it is Exhibit 5B. The cocaine was sealed in an envelope marked Exhibit 3–C. In this case it is marked Exhibit 5C.

Exhibit 6 is an envelope which in this case is marked Exhibit 6A. It contained a letter which was not separately marked in the state court action and which in this case has been marked Exhibit 6B.

Exhibit 7 is an envelope which in this case has been marked Exhibit 7A. It contained three sheets of paper, which in this case have been marked Exhibit 7B, on two of which there is writing.

its admissibility. The failure to object promptly to an offer of evidence waives the objection. *State v. Huerta,* 191 Neb. 280, 214 N.W.2d 613." *State v. Hogan,* 194 Neb. 207, 212, 231 N.W. 2d 135, 139.

On the basis of the record above set forth it would appear that petitioner is correct, and there was no need for an objection. The record of the offer of the exhibits, however, supports the Supreme Court's position. The original transcript (pp. 95, 96, 97) shows the proceedings when Exhibits 1 through 11 were each separately offered. As to Exhibit 1 an objection was made as to relevance and materiality. As to Exhibit 2 the objection was: "Your Honor, other than the continuing objections to Exhibit #2, my only other objection would be based on its foundation for the reason that there is no showing what part of that has anything to do with marijuana." As to Exhibit 3 the record shows: "My next offer would be what has been marked Exhibits #3, and the contents therein, which were A, B and C. MR. BURCHARD: I have no objections to the Exhibit #3, Your Honor. THE COURT: It will be received together with #3-A, B and C." As to Exhibits 4, 5, 5-A, 9, 10, and 11 counsel used language indicating "no other objection."

■ Putting ourselves in the position of the trial court when these exhibits were offered, we observe as to Exhibit 1 no mention of the continuing objection but objection on other grounds. When Exhibit 2 was offered counsel specifically referred to the continuing objection. When Exhibit 3 and its contents were offered counsel said "I have no objections to the Exhibit #3." The trial court could conclude, as did the Nebraska Supreme Court, that counsel was waiving all objection including the continuing objection.

This is supported by the fact that when Exhibits 4, 5 and 5-A were offered counsel made the statement "no other objection." Again, when Exhibits 6, 7, and 8 were offered counsel objected

only to foundation, without using the language "no other objection." Following this, when Exhibits 9, 10 and 11 were offered, again counsel stated "no other objection." It seems evident that counsel was not relying upon the continuing objection as to all of the exhibits, including Exhibit 3.

Nevertheless, this court concludes to give consideration to the hearsay claim now being made. All three letters, Exhibits 3, 6, and 7, including the written contents, appear in the same handwriting. Hogan had read Exhibits 6 and 7 prior to the receipt of Exhibit 3. The envelopes, Exhibits 7 and 3-A, each had a return reading: "Leonard Russell, Hotel Dann, Bogota, Columbia." Exhibit 7 was addressed to Miss Lynn Jensen at Hogan's address, 551 E 26, Kearney.

Exhibit 6, addressed to Hogan at his Kearney address, bore a return in the same handwriting as the other two, but with a different last name. The return read: "Leonard Jensen, Bogota, Columbia." Hogan's roommate at Kearney was Lynn Jensen (T. 109) " . . . he was visiting South America and Columbia of South America" at the time of Hogan's trial (T. 112) according to the testimony of Hogan's mother.

Hogan, in his testimony, admitted that one letter was sent by his roommate. He did not say and was not asked by counsel for either side to which letter he was making reference when he said one was sent by his roommate.

On direct examination, with reference to the first two letters, which would be Exhibits 6 and 7, in answering a question as to whether he was able to tell how to contact his roommate, he stated: "No, the one was sent by Leonard Russell and the other one was sent by my roommate, Lynn, and neither one of them had what would be called a sufficient return address to send something back out of the country, to send mail back."

Later on Hogan claimed that he had never met a Leonard Russell and presumed it was someone his roommate

knew down there. All of this is mentioned because a jury and this Court can only conclude from an examination of the letters that Hogan at his trial was not telling the whole or full truth as to the letters and his knowledge of the sender. It is clear from his admission that at least one letter was written by his roommate. Any reasonable juror would believe that all three letters were written by the same person, namely his roommate.

The jury concluded as stated, and correctly, that all three were from his roommate, Lynn Jensen, who was not using his correct name on the returns. Each uses terminology of the drug trade. It is a fair reading of the first two letters to conclude that something would be sent Hogan from Bogota and also that "snow", another term for cocaine, would arrive in a few days. This Court concludes, as did the Supreme Court, that these letters were properly admitted in evidence.

"These letters were not offered to prove the truth of their contents but rather to show the defendant's knowledge of the identity of one Leonard Russell and of his presence in Bogota, Columbia; and also defendant's knowledge of the terminology of drug use. A written extrajudicial utterance may be admissible in evidence to prove the truth of the assertion made if one of the many exceptions to the hearsay rule is satisfied, or it may be admissible in evidence without regard to the truth of the assertion made for its nontestimonial value as a circumstance, provided it is legally relevant. The hearsay rule does not apply to the latter use. See, 6 Wigmore (3d Ed.), §§ 1788 to 1792, pp. 234 to 240; *Phenix v. State*, 488 S.W.2d 759 (Tex.Cr. App.). Exhibits 6 and 7 here were properly admitted." *State v. Hogan*,

194 Neb. 207, 213, 231 N.W.2d 135, 139.

In evaluating the Supreme Court's ruling, we observe that Justice McCown has been a frequent dissenter in that court in matters involving the Bill of Rights. His dissents are always carefully considered by this Court. The fact that he writes an affirmance of Hogan's conviction for a unanimous court gives the opinion great weight in determining whether Hogan's constitutional rights have been violated.

The writ of habeas corpus is ordinarily not available to review state court rulings on the admission of evidence. *See, Atwell v. State*, 426 F.2d 912 (8th Cir. 1970); *Walle v. Sigler*, 456 F.2d 1153 (8th Cir. 1972). Similarly, it should not be available to a one judge district court to determine whether a state supreme court had correctly concluded that an exhibit was introduced into evidence without objection. The complained of ruling that the exhibit was received in evidence without objection does not reach constitutional proportions.

A reading of the record leaves one with the positive conviction that Hogan was guilty as charged and that he was fortunate that the trial judge was so lenient in the sentence imposed. It is unfortunate that a youth with a fine and respected mother became associated with the drug traffic. It is unfortunate that he withheld the full truth from the jury although doubtless the full truth would have convicted him as readily as his half truths. He has had a fair trial, a lenient sentence, a well presented appeal, and this court should not on the record before it reach a conclusion that the trial judge and seven members of the Nebraska Supreme Court were wrong in their decision.

The writ of habeas corpus is denied.