STATE OF NEBRASKA, APPELLEE, v. RAYMOND E. DIRGO, APPELLANT.

241 N. W. 2d 351

Filed April 28, 1976. No. 40356.

John A. Rickerson and Neal Stenberg, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before WHITE, C. J., SPENCER, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

CLINTON, J.

Defendant Raymond E. Dirgo was found guilty by a jury of the crime of robbery and was sentenced to a term of 3 years in the Nebraska Penal and Correctional Complex. He has appealed, making the following assignments of error: (1) The evidence was insufficient as a matter of law to support the verdict and hence his

motion for a directed verdict should have been granted. (2) The court erred in giving an instruction which permitted the jury to consider whether the defendant was guilty by reason of being an aider and abettor. (3) The foundation for admission into evidence of a television set and bottles of liquor, the subject of the theft, was insufficient and the court therefore erred in admitting such evidence.

A recital of the import of the State's evidence disposes of all the assignments adversely to the defendant's contentions. The robbery itself was established by direct testimony of the victim. Collaboration of third parties and identity of stolen property are in part circumstantial.

The evidence would permit the jury to find as follows. On the evening of March 2, 1975, at about the hour of 6 o'clock p.m., the victim, Paul Ronk, went to the Kentucky Tavern in Omaha where he consumed 10 or 12 bottles of beer. At about 11 or 11:30 p.m. he left the tavern alone and drove his car to downtown Omaha with the intention of going to a restaurant. However, he decided to have a drink and went to the Diamond Bar. There he met the defendant Dirgo with whom he was not previously acquainted. He struck up a conversation with Dirgo. The two drank together until the tavern closed about 1:15 a.m. Then they went in Ronk's car to Ronk's apartment at 4424 North 28th Street. There Ronk had a drink and Dirgo may have also had one. At that time Ronk arose to fix himself another drink. Only Ronk and Dirgo were in the apartment. As Ronk turned his back Dirgo hit him in the head, knocking him to the floor. Dirgo then continued to beat him. During this beating Ronk heard his apartment door open and "a couple of other people come in." Ronk did not see the other persons nor hear their voices, but heard Dirgo giving directions which included instructions to tear the phone from the wall and also to take the bottles of liquor. Ronk testified that the robbers

took the liquor, a television set, and $35 in cash from his billfold after they first removed it from his pocket while he was on the floor. The billfold was later found in the yard of 4424 North 28th Street.

At the time the robbery was taking place, two Omaha police department cruiser officers, Dutton and Dunning, were driving east on Ames Avenue toward 28th Street. (Ronk's apartment was in a building located at the southwest corner of the intersection of 28th Street and Ames Avenue.) As the officers passed the intersection they noticed an automobile with headlights on, parked on the east side of 28th Street about 100 feet south of Ames Avenue. It was parked between two other automobiles, one of which was later shown to be that of Ronk. The officers observed two persons in the car. Because the car was one which the officers had not seen in the neighborhood previously, they drove east 1 block and circled the block, coming back by the parked car. Just as they approached the car a Caucasion male, later identified as Mitchell, ran from the porch of 4424 North 28th Street, crossed in front of the cruiser, and ran between the car which had its lights on and one of the other parked cars. As the man reached a fence on the east side of 28th Street he dropped bottles of liquor he was carrying and fled between two houses. The officers turned the car east on Ames Avenue. Then Dutton got out, pursued Mitchell, and apprehended him when Mitchell doubled back toward the parked car. That car had departed in the meantime. Ronk by this time had revived, gone outside where he saw the police car, and yelled to the officers that he had been robbed. The officers then took his story. They observed he had been badly beaten.

Dunning had earlier seen the parked auto go to Ames Avenue and turn left. He gave, by police radio, a description of the car, a 1966 blue Oldsmobile or Chevrolet, and requested a pickup. Another cruiser officer, Lynch, heard the broadcast while he was at 30th Street and

Ames Avenue. He began a search and at 42nd Street and Grand Avenue came upon a car matching the description given by Dunning. He changed course to follow that car and when he did so the car fled at high speed. Lynch gave chase and about 20 blocks later the car crashed into two parked automobiles. One of the occupants of the car got out and ran. Lynch did not see his face and could not identify him, but described him as being about 6 foot 1 inch or 6 foot 2 inches and wearing long, dark hair. The other occupant of the car, one Lutz, had suffered a broken arm in the collision and did not run. Lynch handcuffed him to the steering wheel of the car and then sought the man who had fled, but was unable to find him. Lynch then checked the auto registration and found it was registered to one Raymond Dirgo of a Florence Boulevard address located 4 or 5 blocks from the accident scene. Lynch found in the back seat of the Dirgo car a television set, apparently damaged in the collision, but which matched the description of that taken in the Ronk robbery. At trial the television set was received into evidence on the basis of Ronk's testimony that it was the same kind as the one taken from his apartment and on the officer's testimony that the television set was the one found in the car.

After Lynch' futile attempt to find the second man, he then drove to the Florence Boulevard address and there talked to one Raymond Dirgo, father of the defendant. The father told the officer that the defendant had previously lived at that address but had moved out about a week earlier. The State at trial offered no direct evidence to show that the automobile in which Lutz was apprehended was the property of the defendant, Raymond E. Dirgo, rather than the property of the father, Raymond Dirgo. This was left to circumstantial inference.

Prior to talking to the father, Lynch had Lutz taken to the hospital. There officer Dunning, who was at the

hospital with Ronk and Mitchell, observed Lutz and recognized him as one of the two occupants of the car that had been parked opposite Ronk's apartment.

Dutton and Dunning, who had seen Mitchell drop the liquor bottles, had, during their investigation following the incident, called a police department identification technician who took pictures of the bottles, one of which was broken. Later an identification technician lifted fingerprints from one of the bottles and these, by comparison with exemplar prints taken from the defendant, were found to be the fingerprints of the defendant. At trial Ronk testified that at the time of the robbery he had in his apartment three bottles of liquor of the kind and brand found and that they were missing after the robbery. The bottles and the pictures taken by the technician were received in evidence.

This summary of the evidence demonstrates that it was sufficient to permit the jury to find that Dirgo was a participant in the robbery and collaborated with Mitchell and Lutz therein even though the means by which the collaboration was arranged can only be inferred.

The applicable rules are: "This court, in a criminal action, will not interfere with a verdict of guilty based upon conflicting evidence unless it is so lacking in probative force that, as a matter of law, it is insufficient to support a finding of guilt beyond a reasonable doubt." State v. Monroe, 188 Neb. 100, 195 N. W. 2d 159.

"Whoever aids, abets, or procures another to commit any offense may be prosecuted and punished as if he were the principal offender. . . . Aiding and abetting involves some participation in the criminal act or involves some conscious sharing in the criminal act, as in something that accused wishes to bring about, in furtherance of the common design, either before or at the time the criminal act is committed, and it is necessary that he seeks by his action to make it succeed." State v. Alvarez, 189 Neb. 276, 202 N. W. 2d 600.

A common purpose or criminal intent among two or more persons to commit a crime need not be shown by direct evidence, but may be proved by the circumstances surrounding the act. State v. Knecht, 181 Neb. 149, 147 N. W. 2d 167. The circumstantial foundation for the admission of the bottles and the television set was clearly sufficient. See State v. Huerta, 191 Neb. 280, 214 N. W. 2d 613.

AFFIRMED.